582 A.2d 879

**COMMONWEALTH of Pennsylvania**

v.

**Daniel W. GOWAN, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Ronnie M. McRAE, Appellants.**

Superior Court of Pennsylvania.

Argued June 26, 1990.

Filed Sept. 25, 1990.

Reargument Denied Dec. 4, 1990.

478

Ronnie M. McRae, pro se.

Patrick T. Kiniry, Asst. Dist. Atty., Johnstown, for Com.

Before McEWEN, TAMILIA and BROSKY, JJ.

TAMILIA, Judge:

The appellants, Ronnie M. McRae and Daniel W. Gowen, appeal pro se to this Court from judgments of sentence entered on July 5, 1988 following their convictions of disorderly conduct in violation of 18 Pa.C.S. § 5503(a)(2).

## § 5503. Disorderly conduct

**(a) Offense defined.**—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

. . . . .

(2) makes unreasonable noise;

. . . .

On November 2, 1987, the appellants, preachers of the Anabaptists' faith, were preaching and distributing religious literature to lunchtime passersby in Central Park, Johnstown, Pennsylvania. Appellants were arrested for disorderly conduct when they allegedly refused police officers' warnings to lower their voices (H.T., 4/19/88, pp. 20–21). McRae and Gowen waived their rights to counsel and to jury trials (H.T. at 3–4). Accordingly, on April 19, 1988 the appellants' consolidated cases were presented at a non-jury bench trial with appellants acting pro se.[1] The court found the appellants guilty of disorderly conduct as a summary offense. Appellants' motions for new trial and in arrest of judgment were denied by Order of June 7, 1988. Sentence was entered as to both appellants on July 5, 1988, ordering each to pay the costs of prosecution and a fifty dollar ($50) fine.

On appeal to this Court, McRae and Gowen argue three points of law: 1) their arrest was in violation of their first amendment right to exercise free speech; 2) the statute pursuant to which they were arrested and convicted is unconstitutionally vague and overbroad and 3) they were denied a fair and impartial trial.

Appellants' first amendment argument has the greatest viability, and upon resolution of this issue, in conjunction with a determination of whether appellants' exercise of their freedom of speech under the circumstances constitutes unreasonable noise, it becomes unnecessary to

1. It should be noted the court, sua sponte, appointed counsel to sit in at trial to assist appellants should they so desire (H.T., 4/19/88, p. 10).

consider the other two issues on their merits. In passing, however, we must find that the statute is sufficiently specific to cover cases where the action of preachers is such as to create unreasonable noise, despite the first amendment right to freedom of speech. As to the third issue, our review of the record convinces us the appellants received a fair trial and that Judge Thomas Swope, throughout, was extremely solicitous of the appellants' rights, particularly in view of the fact they refused proffered representation by counsel. Their allegation that they were not permitted argument or the right to present witnesses is totally unsupported by the record. Appellants waived their right to present witnesses as they offered no witnesses other than Mr. McRae, who testified extensively on his own behalf (Mr. Gowen declining to make a statement) and further advanced his position during cross-examination.

 The focus of this case centers on the sufficiency of evidence to find, beyond a reasonable doubt, pursuant to section 5503(a)(2), the conduct engaged in by appellants constituted unreasonable noise. What constitutes unreasonable noise for purposes of the statute is related to the factual circumstances in each case. Standing on a sidewalk or in a public place reading from the bible and expressing dissatisfaction with the status quo are constitutionally protected exercises of free speech. *Commonwealth v. Roth*, 366 Pa.Super. 575, 531 A.2d 1133 (1987), appeal denied 518 Pa. 625, 541 A.2d 1137 (1988). Since the issue in this case turns on the unreasonableness of noise appellants created in exercising their first amendment right, we must carefully balance the fundamental right to free speech against the annoyance or inconvenience to other persons. The constitutionality of this statute has been considered by our Supreme Court in *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54 (1980), appl. dismissed 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124. *Mastrangelo* held that this section may not be used to punish anyone exercising protected first amendment rights. Thus it is incumbent upon the courts to differentiate between activity which is the exercise of free

speech and unreasonable noise. It is incontrovertible that the exercise of free speech can go beyond constitutionally protected boundaries to the realm of prohibited and criminal behavior. "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic." *Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919).

■ The narrow issue in this case may be stated as whether preaching by appellants as part of their ministry, in a loud manner, in a public park, under the facts of this case, constitutes unreasonable noise prohibited by the statute.

The evidence considered by the court consisted of testimony by two police officers and a store owner. Officer Layton testified he was directed to the park during the noon hour by a superior and upon arrival found a crowd gathering across the street and traffic stopping to find out what was going on. Other persons in the park were moving to the other end of the park. The reason for the activity was the hollering and loud noise being made by the appellant, Gowan. Captain Petro directed him to lower his voice four times, and upon his failure to do so, he was placed under arrest (T.T. at 18–20). As to appellant McRae, he too began preaching in a loud manner and after being directed to lower his voice, he too was arrested when he refused to comply (T.T. at 20–21).

Officer Moran testified they had received complaints at the police station about loud noise and people waving their arms at Central Park. He was directed by Captain Petro to investigate and upon approaching the park, he heard and observed Mr. Gowan yelling at the top of his voice. There were people standing around watching and looking. Captain Petro, after warning Gowan, instructed officers to arrest him. According to Officer Moran, people were saying "aren't you going to do anything about that" and "[i]t is about time somebody came over here" (T.T. at 29).

The testimony of William Felix, a store owner adjacent to the park, was that a customer remarked about the preaching. He could hear the voice inside the store—the door being open. The store was 150 to 200 feet away from appellants. He heard one preaching for about ten minutes, the other spoke for less than two minutes. Mr. Felix said the preaching was disturbing because it reduced the number of people who come to the park which, in turn, reduced his sale of ice cream cones. He observed some people moving away to the other side of the park while others watched and some laughed (T.T. at 33–35).

From the testimony presented, we cannot say the activity of the appellants, in the exercise of their right to free speech, created more than an annoyance to the people in and around the park. Other than the police, who went to the park in response to an unspecific complaint, only one person testified to being directly affected by the activity of appellants. The description of the activity of the people in and around the park is consistent with people exhibiting a range of reactions to the preaching, some being annoyed and moving away from it, others remaining to watch and listen, others laughing because of it. Based on all of the testimony, the conclusion reached by the trial court that the preaching constituted unreasonable noise cannot be supported beyond a reasonable doubt.

In assessing the effect of constitutionally protected activity such as preaching, it is clear that the same level of loudness or "noise," in conducting an activity which must be tolerated or accepted, would be unacceptable if the party were conducting unprotected activity such as inciting to riot or harassing the police in their law enforcement function. Appellants make the point in their brief and arguments that preaching has been a historic and traditional exercise of religious freedom. We are accustomed to more sedate practices in confined areas for the most part and less accepting or tolerant of the mode of preaching practiced by appellants. The great speech to hundreds of thousands of people at the Elipse in Washington, D.C., by Martin Luther

King, under electronic amplification, may have and did annoy many persons, but it could not have been treated as unreasonable noise for that reason. In this area, there is clearly a wide range of subjective acceptance or rejection of the message which colors the degree of tolerance people will have of the volume of delivery. When engaged in a constitutionally protected activity of the fundamental nature of freedom of speech, we must exercise restraint in prohibiting the activity lest we destroy the right. Unreasonable noise has been defined as "not fitting or proper in respect to the conventional standards of organized society." *Mastrangelo, supra,* citing *Commonwealth v. Greene,* 410 Pa. 111, 113, 189 A.2d 141, 143 (1963). *Mastrangelo* further held that one is guilty of disorderly conduct if, with the intent of breaching the public peace, he makes unreasonable noise. Thus, in the context of this case, when a protected first amendment right to free speech is implicated, it is necessary that the actor *intend* to breach the public peace by making unreasonable noise. We believe the Commonwealth has failed to establish by sufficient evidence that appellants are guilty of the offense. Mere annoyance to the public may not suffice. In *International Society for Krishna Consciousness, Inc. v. Griffin,* (W.D.Pa.) 437 F.Supp. 666 (1977), a county ordinance regulating distribution of religious literature and solicitation of contributions for religious purposes at airports was held to be unconstitutional. However, a city ordinance prohibiting use of any loud or offensive device or performance as means of advertising or attracting a crowd did not violate constitutional guarantees when applied to ministers preaching on streets through loud speakers. *Hamilton v. Montrose,* 109 Colo. 228, 124 P.2d 757 (1942).

Religious liberty as recognized and secured under constitutional provisions does not mean a license to engage in acts having a tendency to disturb the public peace under the form of religious worship, nor does it include the right to disregard those regulations which the legislature had deemed reasonably necessary for the security of

public order.[1] The right of an individual to propagate his religious views is not to be denied, but the right does not go so far as to permit one to commit a breach of the peace under the guise of preaching the gospel.[2]

---

[1] *State v. White*, 64 NH 48, 5 A 828, affirming conviction under a statute prohibiting the beating of a drum within a town despite the defense that the act was committed in performance of religious worship.

A man may believe in what kind of religion he pleases or in no religion, and as long as he practices his belief without a breach of the peace, he will not be disturbed. *State v. Langston*, 195 SC 190, 11 SE2d 1, cert den 311 US 685, 85 L ed 442, 61 S Ct 59.

[2] *Delk v. Commonwealth*, 166 Ky 39, 178 SW 1129, holding minister properly charged with breach of peace for using obscene and foul language in the pulpit.

See also *Louisiana v. Bottoms* (Mo App) 300 SW 316, recognizing the rule, but holding that conduct amounting at most to overzealous religious worship, in that a pastor during religious services shouted at intervals "Amen," "Praise God," and "Glory hallelujah" in a tone of voice heard several blocks away, did not violate a city ordinance prescribing punishment for disturbing the peace by shouting in the nighttime.

12 Am Jur2d, Breach of Peace and Disorderly Conduct, § 13.

Unquestionably, the municipality can regulate the degree to which appellants can use the park and the manner in which they can preach, so long as it is uniform and equally applicable to all similar use. From the testimony, it appears the park has been used for other religious, secular, political and entertainment purposes with varying degrees of loudness presented by the participants. It appears that treatment of the sound emanating as "unreasonable noise," depends more upon the acceptance of the participants than on the actual noise produced. The very appearance of appellants, who wear beards and dress in the manner of Amish males, could have been the instigating factor, aside from their preaching, for unspecified complaints. Under these circumstances, we cannot assume that loudness in

preaching, in the absence of definitive regulations concerning all similar activity, per se, amounted to a breach of the peace.

The evidence itself as detailed above established annoying behavior (to some) for a limited period of time, when the surrounding volume of noise from traffic and other activities was at the noon time peak. Since preaching itself was not proscribed, the testimony by the single witness and the police called to quell the preaching failed to establish the noise was unreasonable to the degree it constituted a crime.

Judgment of sentence vacated and appellants discharged.

Jurisdiction relinquished.