## Commonwealth v. Merrill

*James M. Jacobs Jr., assistant district attorney,* for the Commonwealth.

*John Thomas Merrill,* and *Daniel Woodman Gowen,* in properia persona.

CASCIO, *J.,* June 24, 1991—It is a rare occasion when this court is afforded the opportunity to reflect upon the fundamental rights guaranteed by the First Amendment to the Constitution of the United States and Article 1 of the Pennsylvania Constitution. The Bill of Rights is sacrosanct to each of us—including

the defendants in this case. Our decision today recalls decisions which have crossed the benches of countless courtrooms where men and women have struggled to be heard and where democracy has prevailed. This court recognizes the defendants' right to freedom of speech but must apply the law as it sees its duty—to recognize that the fundamental right to freedom of speech is not absolute and that boundaries have been set. The defendants' actions speak to the core of our Constitution. However, it has been held that such activity under certain circumstances is not protected speech.[*]

We believe that the instant fact situation does not furnish the defendants with a protective First Amendment umbrella. Their interference with an ongoing police investigation was not justified. In our eyes, the weight and sufficiency of the evidence is ample to support the convictions. Therefore, defendants' motion in arrest of judgment and motion for a new trial are denied.

## FACTS

On the evening of October 20, 1989, Officer Drenner of the Pennsylvania State Police was detailed to in-

---

[*] *Schenk v. United States,* 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919); *Whitney v. California,* 274 U.S. 357, 47 S.Ct. 641, 71 L.Ed. 1095 (1927); *Stromberg v. California,* 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *DeJonge v. Oregon,* 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937); *Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 9400, 84 L.Ed. 1213 (1940); *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942).

vestigate an assault in the parking lot of Rhoads' Restaurant in Boswell, Pennsylvania. While he was conducting the investigation, a small group of approximately 12-16 people gathered in the parking lot. While Officer Drenner was interviewing the parties from the incident in his patrol car, the defendants arrived on the scene and began preaching. The defendants became so loud as to disrupt Officers Drenner's interviews in his patrol car even with the windows rolled up.

A group of 50-70 people had now gathered. The defendants were preaching that Boswell was "a town of fornicators, alcoholics, queers, lesbians" and such. Officer Drenner asked the defendants to stop or at least tone it down. Both defendants refused to stop. Officer Drenner called for Trooper Pivirotto to assist him as the crowd was spilling out into the street and becoming volatile. The people in the street were arguing with the defendants and, at one point, two beer bottles were thrown at defendants. When Trooper Pivirotto arrived, he asked the defendants to tone it down. After two or three more unsuccessful attempts to get the defendants to lower their voices to a normal tone so that Trooper Drenner could continue his investigation, the officers arrested the defendants and charged them with disorderly conduct under 18 Pa.C.S. §5503(a)(2). They were found guilty as charged following a non-jury trial on January 16, 1990. These post-trial motions were then timely filed.

## MOTION IN ARREST OF JUDGMENT AND MOTION FOR NEW TRIAL

The defendants have challenged the sufficiency of the evidence in their motion in arrest of judgment and

the weight of the evidence in their motion for new trial.

In ruling on a motion in arrest of judgment we apply the following standard:

"The proper procedure to challenge the sufficiency of the evidence is by a post-verdict motion in arrest of judgment. *Commonwealth v. Holmes,* 315 Pa. Super. 256, 260 A.2d 1268 (1983). In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Madison,* 501 Pa. 485, 490, 462 A.2d 228, 231 (1983);... [T]he credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact; the fact finder is free to believe all, some or none of the evidence. *Commonwealth v. Smith,* 502 Pa. 600, 604, 467 A.2d 1120, 1122 (1983)...." *Commonwealth v. Taylor,* 324 Pa. Super. 420, 424, 471 A.2d 1228, 1229 (1984).

In contrast, when we consider a motion for new trial we apply a different test.

"A motion for new trial on grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge and his decision will not be reversed on appeal unless there has been an abuse of

discretion.... The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail." *Commonwealth v. Taylor, supra* at 425, 471 A.2d at 1230. (citation omitted)

## DISCUSSION

Defendants rely heavily on the recent Superior Court opinion reversing their conviction for disorderly conduct in Cambria County to support their contention that this court erred in finding them guilty. That consolidated case, *Commonwealth v. Gowan and McRae,* 399 Pa. Super. 477, 582 A.2d 879 (1990), revolved around a set of facts distinguishable from those present in the instant case. In the Cambria County case, these Anabaptist preachers were preaching and distributing religious literature and they were arrested for disorderly conduct. The activity of the preachers caused little disturbance other than to one store owner who complained that the preaching chased people from the park and, therefore, was bad for business. In Boswell, the activity of the preachers disrupted an ongoing police investigation of an alleged assault and incited the crowd to jeer and throw bottles.

## STATUTE

The defendants were arrested for disorderly conduct pursuant to 18 Pa.C.S. §5503(a)(2) which states:

"§5503—*Disorderly Conduct*

"(a) Offense defined—A person is guilty of disorderly conduct if, with intent to cause public inconvenience,

annoyance or alarm, or recklessly creating a risk thereof, he ...

"(2) makes unreasonable noise;..."

Unreasonable noise has been defined by the Pennsylvania Supreme Court as "not fitting or proper in respect to the conventional standards of organized society on a legally construed community." *Commonwealth v. Mastrangelo,* 489 Pa. 254, 261, 414 A.2d 54, 58 (1980), *appeal dismissed,* 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124, citing *Commonwealth v. Greene,* 410 Pa. 111, 113, 189 A.2d 141, 143 (1963). In *Mastrangelo,* the court upheld the conviction on a disorderly conduct charge also filed under 18 Pa.C.S. §5503(a)(2), based upon defendant's actions in harassing a meter maid and shouting epithets at her when she ticketed his illegally parked car and when she passed by his store the next day. The Supreme Court also referred to 18 Pa.C.S. §5101, which prohibits a person from intentionally obstructing the administration of law or government function, in upholding the conviction.

The court held that Mastrangelo, "through a course of disorderly conduct, intentionally obstructed a meter maid from carrying out her lawful duties and was thus properly convicted by more than sufficient evidence." *Mastrangelo, supra,* at 265, 414 A.2d at 60. However, *Mastrangelo* also made it clear that "the disorderly conduct statute may not be used to punish anyone exercising a protected First Amendment right." *Mastrangelo, supra* at 261, 414 A.2d at 58. Therefore, it is imperative to determine whether defendants' conduct was protected by the First Amendment or whether it was unreasonable noise.

Judge Tamilia clearly stated that a First Amendment analysis is done on a case-by-case basis using a strict balancing test.

"What constitutes unreasonable noise for purposes of the statute is related to the factual circumstances in each case. Standing on a sidewalk or in a public place reading from the bible and expressing dissatisfaction with the status quo are constitutionally protected exercises of free speech. *Commonwealth v. Roth,* 366 Pa. Super. 575, 531 A.2d 1133 (1987), *appeal denied,* 518 Pa. 625, 541 A.2d 1137. Since the issue in this case turns on the unreasonableness of noise appellants created in exercising their first amendment right, we must carefully balance the fundamental right to free speech against the annoyance or inconvenience to other persons." *Commonwealth v. Gowan and McRae, supra* at 480, 582 A.2d at 881.

Although the defendants' motions exhaustively traced the First Amendment right to freedom of speech as it was applied and practiced both in the courts and in our Commonwealth's history, they failed to address the issue of whether obstructing a lawful police investigation can constitute unreasonable noise. For as much as they rely on this Superior Court opinion to support their argument, they fail to address the part of the opinion that we believe clearly applies to the instant facts. All speech is not protected, as Judge Tamilia stated:

"In assessing the effect of constitutionally protected activity such as preaching it is clear that the same level of loudness or 'noise,' in conducting an activity which must be tolerated or accepted, would be *unacceptable*

if the party were conducting unprotected activity such as inciting to riot or *harassing the police in their law enforcement function." Id.* at 482, 582 A.2d at 882. (emphasis added)

There are a number of other cases discussing limitations on First Amendment rights. One line of cases discusses acts and words that are likely to produce violence in others. In *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court reversed two of three convictions for inciting a breach of the peace against Cantwell and his two sons, all Jehovah's Witnesses. They had been distributing books, pamphlets and periodicals in a heavily populated Catholic neighborhood of New Haven. The trouble arose when Cantwell asked a passerby to listen to a phonograph record, describing a book entitled *Enemies,* which included an attack on the Catholic religion. Some listeners became irate and the Cantwells were arrested.

The court spoke to the issue of possible violent results from speech.

"No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets or other immediate threat to public safety, peace or order, appears, the power of the state to prevent or punish is obvious." *Cantwell, supra* at 308, 84 L.Ed. at 1220.

The court determined that the "sound of the phonograph is not shown to have disturbed residents of the street, to have drawn a crowd or to have impeded traffic." *Cantwell, supra* at 300, 84 L.Ed. at 1220, see also, *Carroll v. President & Com'rs. of Princess Anne,* 393 U.S. 175, 80 S.Ct. 347, 21 L.Ed.2d 325 (1968); *Garner v. Louisiana,* 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961).

In the instant case, the preaching did draw a crowd, people were in the street, and a hazard had been created by the vociferous preaching of the defendants. Testimony indicated that although the crowd was jeering and telling defendants to go home and beer bottles were thrown toward them, the defendants refused to quit.

The U.S. Supreme Court affirmed a New York disorderly conduct conviction of a college student who was addressing "a crowd, including Negroes, through a loud speaker system from a box on the sidewalk, making derogatory remarks concerning public officials and indicating that Negroes should rise up in arms and fight for equal rights. In view of the excitement aroused by his speech, the police requested him to stop speaking, but he ignored these requests. [His conviction was upheld] on the ground that a clear and present danger of disorder was threatened and hence the preservation of peace and order on the streets did not encroach on defendant's right of free speech." *Feiner v. New York,* 340 U.S. 315, 315, 71 S.Ct. 303, 303, 95 L.Ed. 295, 295 (1950). To support their decision the court held that:

"It is one thing to say that the police cannot be used as an instrument for the suppression of unpopular views, and another to say that when as here the speaker

passes the bounds of argument or persuasion and undertakes incitement to riot, they are powerless to prevent a breach of the peace. Nor in this case can we condemn the considered judgment of three New York courts approving the means which the police, faced with a crisis, used in the exercise of their power and duty to preserve peace and order. The findings of the state courts as to the existing situation and the imminence of greater disorder coupled with petitioner's deliberate defiance of the police officers convince us that we should not reverse this conviction in the name of free speech." *Feiner, supra* at 321, 95 L.Ed. 2d at 300.

In sustaining a disorderly conduct conviction against a man inciting a crowd and harassing police officers who had arrested two minors on a liquor violation arrest, the Illinois Supreme Court stated:

"It is clear that the right to knowingly commit an act in such an unreasonable manner as to provoke, make or aid in making a breach of peace does not come within the protections of the first amendment." *City of Chicago v. Morris,* 47 Ill. 2d 226, 264 N.E.2d 1, 3 (1970).

That court further stated that "whether a violation has occurred is determined by the reasonableness of the conduct in relation to the surrounding circumstances." *Id.,* 264 N.E.2d at 3-4.

Because of the lack of case law on this matter in Pennsylvania and the similarities between the Illinois and Pennsylvania disorderly conduct statutes, we believe the Illinois Supreme Court's language and the reasoning of the U.S. Supreme Court is helpful in our case. The conduct of the preachers in Cambria County

was considered reasonable in relation to the surrounding circumstances. In Boswell, the defendants' intentional conduct was unreasonable in that it provoked and aided in a breach of the peace by creating a crowd that interfered with the public highway and was likely to produce more violence as evidenced by the activities of the crowd. The general hazard created by the defendants' conduct is but a part of the evidence presented that we believe is sufficient to sustain the convictions.

Another line of cases limiting the First Amendment right to freedom of speech deals with meritless speech, profanity and fighting words. Profanity is clearly dealt with in §5503(a)(3) and, because the defendants were found guilty of §5503(a)(2), we will not deal with whether their statements were profane but will deal only with whether they were meritless or "fighting words."

Again, we turn to *Cantwell, supra,* wherein the court stated:

"Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Cantwell, supra* at 310, 84 L.Ed. at 1221.

A year later, in *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), in discussing "insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace" the U.S. Supreme Court stated:

"It has been well observed that such utterances are no essential part of any exposition of ideas and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Chaplinsky, supra* at 572, 62 S.Ct. at 769, 86 L.Ed. at 1035.

Clearly, the defendants' vehement condemnation of the Boswell crowd in calling their town by the name of "Boozewell" and saying that it was a town of "fornicators, alcoholics, queers and lesbians" could be considered abusive. It also does not take a great stretch of the imagination to believe that members in that crowd would take such language personally and be insulted. Following the holdings of the U.S. Supreme Court, we believe that this personally abusive language had no merit as communication of information or opinion and, thus, becomes more evidence to remove the protective First Amendment umbrella from the defendants' actions and to sustain the convictions.

The strongest evidence, in our opinion, is the interference with an ongoing police investigation. We will not repeat the discussion of Judge Tamilia's opinion in *Commonwealth v. Gowan, supra,* but will return to *Mastrangelo,* supra, in more detail. As mentioned above, Mastrangelo was charged and convicted of disorderly conduct under 18 Pa.C.S. §5503. Included in the reasoning of the court to sustain the conviction was a reference to 18 Pa.C.S. §5101 which states:

"§5101—*Obstructing administration of law or other governmental function*

"A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts

the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to perform a legal duty other than an official duty or any other means of avoiding compliance with law without affirmative interference with governmental functions."

The court clearly used the language of §5101 in its holding to support a conviction under §5503 when it stated:

"Instantly, appellant, through a course of disorderly conduct, intentionally obstructed a meter maid from carrying out her lawful duties and was thus properly convicted by more than sufficient evidence." *Mastrangelo, supra* at 265, 414 A.2d at 59, see also, *Commonwealth v. Pringle,* 304 Pa. Super. 67, 450 A.2d 103 (1982).

We believe that the language used in *Mastrangelo, supra,* referring to §5101 could also be appropriate in the instant case. Ergo, the defendants, by the intentional use of their voices, caused unreasonable noise that obstructed the police from carrying out their lawful duties and thus were properly convicted by sufficient evidence.

In *State v. Lashinsky,* 81 N.J. 1, 404 A.2d 1121 (1979), the New Jersey Supreme Court upheld a disorderly conduct conviction against a newspaper photographer claiming freedom of the press for interfering with police duties. Lashinsky was a news photographer who happened upon a very serious auto accident. One person in the car was dead and the other seriously injured and trapped. Gasoline and other fluids were leaking creating a risk of fire and explosion. A crowd of 40

to 50 people had gathered and Lashinsky wanted to get as close as possible to take pictures. The only policeman at the scene was trying to keep the crowd back, keep traffic lanes open for emergency vehicles and render whatever assistance he could to the trapped occupant. When Lashinsky was asked to leave the scene he displayed his press card. He "engaged the trooper in a heated argument, lasting about three to four minutes, during which Lashinsky hurled expletives at Herkloz and told the officer to go away and do his own job and let Lashinsky do his. After it became apparent that the photographer had no intention of removing himself from the scene, he was arrested." *Lashinsky, supra,* 404 A.2d at 1124, in discussing the duties and responsibilities of a police officer and his relationship with the citizenry, the court stated:

"The duty of police officers ... is 'not merely to arrest offenders, but to protect persons from threatened wrong and to prevent disorder. In the performance of their duties they may give reasonable directions....' The average citizen is, likewise, held to a similar standard and deemed capable of differentiating between permissible and impermissible behavior. Reasonableness is the key. Hence, where an officer's instructions are obviously reasonable, in furtherance of his duties, an individual toward whom such instructions are directed has a correlative duty to obey them.... If his refusal to respond results in an obstruction of the performance of the officer's proper task, this will constitute a violation of the disorderly persons statute." *Lashinsky, supra,* 404 A.2d 1126. (citations omitted)

We realize that this case comes from a sister state, but we cite it to further illustrate that courts will limit First Amendment rights when they interfere with the

legitimate administration of law enforcement activities and will sustain disorderly conduct convictions.

Accordingly, we believe that the evidence presented as to the general hazard created by the defendants, the questionable merit of their communications and their interference with an ongoing police investigation was sufficient to support their convictions of disorderly conduct and, therefore, defendants' motion in arrest of judgment and motion for new trial are denied.

## ORDER

And now, June 24, 1991, consistent with the foregoing opinion, defendants' motion in arrest of judgment and motion for a new trial are denied. Defendants shall be scheduled for sentencing secundum regulam.

