## Commonwealth v. Gilles

C.P. of Indiana County, no. 1061 Crim. 2001.

*Michael Mandler,* for plaintiff.
*Michael Considine,* for defendant.

OLSON, *J.,* December 27, 2002—This matter comes before the court for consideration of defendant's petition for writ of habeas corpus. For those reasons set forth in this opinion, defendant's petition is granted and all charges against him are dismissed.

## CASE FACTS

The court is presented with a petition for writ of habeas corpus, the sole inquiry is whether the Commonwealth has established a prima facie case at the prelimi-

nary hearing. *Commonwealth v. Austin,* 394 Pa. Super. 146, 575 A.2d 141 (1990). A prima facie case exists where the Commonwealth establishes probable cause to believe a crime has been committed and that the defendant is the offender. *Commonwealth v. Gray,* 322 Pa. Super. 37, 469 A.2d 169 (1983).

In considering the merits for a petition for writ of habeas corpus, the court will ordinarily review the transcript from the preliminary hearing. A transcript has been provided in this case. In addition, the parties are entitled at hearing to present additional evidence on the issue. *Commonwealth v. Morman,* 373 Pa. Super. 360, 541 A.2d 356 (1988). In this case, the parties chose not to have a hearing and elected instead to present this court with a stipulated supplemental record. This record includes the following: a solicitation permit request defendant submitted to the Indiana University of Pennsylvania on October 5, 2001 (request denied); IUP's solicitation policy; the IUP preliminary crime report authored by Sergeant Gregory Davis, arresting officer; still and video photography taken of the incident immediately before and after the defendant's arrest; a transcript of audiotape recording by James Gilles immediately before and after his arrest; and a transcript of July 17, 2002, audio deposition given by Sergeant Gregory Davis, arresting officer. All of these submissions, together with the criminal file at 1061 Crim. 2001, shall constitute the record this court shall use in deciding defendant's petition.

Defendant is charged with disorderly conduct, failure to disperse and defiant trespass. These charges arise from events which occurred on October 5, 2001, on the IUP campus in a public area known as the Oak Grove. At

approximately 11:40 a.m., the defendant began to preach a religious message. He claimed that every Buddhist, Hindu, Muslim, Mormon and Jehovah Witness is damned to hell. He declared most IUP students were damned to hell. He characterized the majority of IUP students as "whores and whoremongers," with campus fraternities being "nothing more than havens and hideouts for drunken horny little devils." As defendant continued to preach a crowd soon gathered.

Defendant began to trade insults with certain members of the crowd. Defendant suggested certain members were communists or homosexuals. The exchange between defendant and certain crowd members eventually turned to the relationship between homosexuality and Christianity. Some crowd members loudly disagreed with defendant's views, while others laughed or simply listened quietly. After about 20 minutes, the IUP Police arrived. The following exchange then occurred:

"Davis: Excuse me, do you have a permit to be here?

"Gilles: Do I need one?

"Davis: Yes, as a matter of fact you do.

"Gilles: Oh, where do I get one?

"Davis: Pick up your book, come over here.

"Gilles: I didn't need one last time.

"Davis: Pick up your book.

"Gilles: Who do I need to see?

"Davis: You're talking to him. You can even do it the easy way.

"Gilles: You're administration?

"Davis: You can either do it the easy way, or you can do it the hard way. It doesn't matter to me.

"Gilles: I don't care either. I beat you last time.

"Davis: Turn around. (Defendant was then arrested.)

The court now will consider defendant's petition with respect to each of the offenses charged.

## DISCUSSION

### A. *Disorderly Conduct*

Defendant was actually charged with two counts of disorderly conduct. In considering the application of defendant's petition to these charges, the court is guided by those standards enunciated by the Superior Court in *Commonwealth v. Gowan,* 399 Pa. Super. 477, 582 A.2d 879 (1990). In *Gowan,* the appellants, two preachers of the Anabaptists' faith, were preaching and distributing literature to lunchtime passers-by in a public park in Johnstown, Pennsylvania. Appellants were arrested for disorderly conduct when they allegedly refused police officers' warnings to lower their voices. At non-jury trial, the court found defendants guilty of disorderly conduct as a summary offense. Defendants appealed.

The Superior Court vacated defendants' convictions. As a threshold consideration, the Superior Court observed: "Standing on a sidewalk or [any] public place reading from the Bible and expressing dissatisfaction with the status quo are constitutionally protected exercises of free speech. . . . Since the issue in this case turns on the unreasonableness of noise appellants created in exercising their First Amendment right, we must carefully balance the fundamental right to free speech against the annoyance or inconvenience to other persons. . . .

[*Commonwealth v. Mastrangelo,* 489 Pa. 254, 414 A.2d 54 (1980)] held that this section may not be used to punish anyone exercising protect[ive] First Amendment rights." 399 Pa. Super. 477, 480, 582 A.2d 879, 881. In examining the facts before it, the court concluded: "From the testimony presented, we cannot say the activity of the appellants, in the exercise of their right to free speech, created more than an annoyance to the people in and around the park. Other than the police, who went to the park in response to an unspecific complaint, only one person testified to being directly affected by the activity of appellants. The description of the activity of the people in and around the park is consistent with people exhibiting a range of reactions to the preaching, some being annoyed and moving away from it, others remaining to watch and listen, others laughing because of it. Based on all of the testimony, the conclusion reached by the trial court that the preaching constituted unreasonable noise cannot be supported beyond a reasonable doubt." 399 Pa Super. 477, 482, 582 A.2d 879, 881-82.

*J.S. v. Bethlehem Area School District,* 569 Pa. 638, 807 A.2d 847 (2002), provides a useful overview of the parameters of protected speech. In this case, which involved the expulsion of a student who used an internet website to post derogatory, profane, offensive, and threatening statements directed towards one of the student's teachers and his principal, the court observed:

"However, while the freedom of speech is rightfully cherished, it is also clear that this right of free speech 'is not absolute at all times and under all circumstances.' . . . For example, certain types of speech can be regulated if they are likely to inflict unacceptable harm. These nar-

row categories of unprotected speech include 'fighting words,' speech that incites others to imminent lawless action, . . . obscenity, . . . certain types of defamatory speech, . . . and 'true threats.' Thus, certain classes of speech may be regulated, or even punished, by government and such action will not violate the Constitution." 807 A.2d 847, 854. (citations omitted)

When it applies these standards to the record now before it, this court determines the Commonwealth has failed to make out a prima facie case for disorderly conduct. Although defendant's remarks doubtless offended some, they do not constitute fighting words, true threats, or invitation to violence. Many of the listeners reacted by being quietly attentive or simply laughing at the proceedings. The speech involved here is protected and may not be suppressed through the use of the disorderly conduct statute. Further, the Commonwealth has not made out a case that the noise involved was unreasonable or that the defendant's conduct constituted a "hazardous condition."

## B. *Failure to Disperse*

This offense is described at 18 Pa.C.S. §5502, which provides:

"*Where three or more persons* are participating in a course of disorderly conduct which cause or may reasonably be expected to cause substantial harm or serious inconvenience, annoyance or alarm, a peace officer or other public servant engaged in executing or enforcing the law may order the participants and others in the immediate vicinity. A person who refuses or knowingly fails

to obey such an order commits a misdemeanor of the second degree." (emphasis added)

Since this offense requires an underlying finding of acts which constitute disorderly conduct, this court's disposition of defendant's disorderly conduct charges mandates a granting of defendant's petition with respect to this offense as well. Further, as the emphasized language makes clear, this offense requires a finding that "three or more persons" are participating in a course of disorderly conduct. The record does not support such a finding. While others apparently were with the defendant when he preached, the record does not support a finding that any of these other individuals were engaged in any acts which remotely could be construed as disorderly conduct.

## C. *Defiant Trespass*

As it considers this charge, the court is guided by two Pennsylvania Supreme Court cases. In *Commonwealth v. Tate,* 495 Pa. 158, 432 A.2d 1382 (1981), the defendants were arrested when they distributed leaflets outside of a private college's building as the director of the Federal Bureau of Investigation was speaking at a public symposium. The Pennsylvania Supreme Court held that the college could not, consistent with defendants' rights of freedom of speech, assembly, and petition, exercise the college's right of property by invoking a standardless permit requirement in such a manner as to prevent defendants from presenting their point of view by distributing leaflets in an area normally open to the public. Such a permit requirement was not a "lawful condi-

tion" with which defendants were obligated to comply or be subject to conviction for defiant trespass.

In *Commonwealth v. Downing,* 511 Pa. 28, 511 A.2d 792 (1986), defendant sought admission to the Temple University Law Library. Although the defendant, who was not a law student, had a permit to enter the law library, this permit was not valid during final exam periods, when admission was restricted to law students only. The defendant nonetheless insisted he had a right to enter the law library. When he then refused a request to leave, the police were called and he was arrested for defiant trespass. Following his conviction, he appealed to the Pennsylvania Superior Court, which reversed, holding that the university law library was open to the public and the defendant therefore could not be convicted of defiant trespass.

The Supreme Court reversed the Superior Court and reinstated defendant's conviction. The Supreme Court held that the university law library was not open to the public when the defendant attempted to enter it. The court observed: "Temple cannot receive, hold, or use property for any other purpose than its chartered purpose—the establishment and maintenance of an educational institution. The university's law library then, like all other facilities owned by the university, is private property maintained as part of its educational facilities for the use of its students. Persons not affiliated with the university or its School of Law have no right to enter and use university facilities, including the law library, unless the university or its law school grants that privilege or license." 511 Pa. 28, 34, 511 A.2d 792, 794.

Taken together, these cases articulate the basic right of a university such as IUP to reasonably regulate the use of its property. At the same time, any campus permitting scheme must have a uniform application and not be propagated or enforced for the purpose of suppressing constitutionally protected speech.

In the instant case, the court notes IUP has propagated detailed permitting regulations which, arguably, encompass the activity in which defendant was engaged. Further, unlike the vague regulations described in *Tate,* IUP's regulations appear to be uniform, content neutral, and tailored to balance free speech issues with the need of the campus to meet its educational mission. Nonetheless, the court need not address whether in this case a proper balance has been struck. When the police approached the defendant he denied knowledge of the need for a permit. A brief and confusing exchange occurred between defendant and the police as to whether and how he could get a permit. At the end of this exchange, the police abruptly arrested the defendant. From this record, the court cannot find a prima facie case that the defendant ignored an unambiguous directive to leave the IUP campus. Thus, the court grants defendant's petition with respect to this offense as well.

In doing so, the court is constrained to remind the defendant he is now aware of IUP's permitting procedures and requirements. Among other things, IUP requires the defendant make the request himself, restricts the use of the Oak Grove for public solicitation of any kind, and imposes time requirements to permit proper consideration of the permit application. Whatever defenses or claims may be available to the defendant should he seek

to reappear to IUP to preach on campus, ignorance of IUP's permitting process is not one of them.

Wherefore, the court enters the following order.

## ORDER

And now, December 27, 2002, upon consideration of defendant's petition for writ of habeas corpus, said petition is granted. There is insufficient evidence to support the charges against defendant. Accordingly, all charges are dismissed.