J-A29037-20

2020 PA Super 300

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSEPH A. MCCONNELL :
:
Appellant : No. 103 MDA 2020

Appeal from the Judgment of Sentence Entered December 18, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-SA-0000299-2019

BEFORE: DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY COLINS, J.: **FILED DECEMBER 30, 2020**

Appellant, Joseph A. McConnell appeals from the judgment of sentence imposed following his conviction of the summary offense of disorderly conduct.[1] We affirm.

On the evening of May 31, 2019, Appellant turned on eight construction-grade floodlights in the backyard of his home in Manheim Township directed towards the home of his neighbor, Gregory Meglic, whose own backyard lights were a source of disturbance to Appellant. At least seven neighbors complained to the police about Appellant's floodlights. Police responded, and Appellant agreed, after more than 45 minutes of discussion with police, to turn off the floodlights. The lights were on for approximately two hours in total.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 5503(a)(4).

On June 3, 2019, the Manheim Township Police Department filed a citation charging Appellant with summary disorderly conduct. On July 11, 2019, Appellant was convicted by a magisterial district judge and ordered to pay a $25 fine along with costs. Appellant filed a timely appeal to the Court of Common Pleas of Lancaster County ("trial court") for a trial *de novo*.

At the December 18, 2019 trial, Mr. Meglic testified that he had previously had "no issues" with Appellant whose home is directly behind his own. N.T., 12/18/19, at 4. Mr. Meglic stated that he had two light strings around the area of his pool and a motion-detecting security light on his home that pointed down towards his pool. *Id.* at 4-5, 9. On the evening of May 31, 2019, Mr. Meglic watched Appellant move the eight construction floodlights onto his back porch and point them towards Mr. Meglic's property. *Id.* at 5. Appellant turned the lights on at approximately 9 pm, and Mr. Meglic subsequently called the police. *Id.* at 4-5, 10. Mr. Meglic described the lights as causing annoyance and alarm, stating that they "penetrated every [] window [] on the backside of our house." *Id.* at 8, 10. In addition, the lights confused his son's friend who was playing in the pool at the time that the lights were turned on. *Id.* at 5. Appellant eventually turned the lights off at approximately 11 pm, but only after Mr. Meglic agreed to turn off his security light at the request of a police officer. *Id.* at 8, 11.

Another of Appellant's neighbors, Jennifer Kane, testified that she was reading a magazine on her living room sofa at approximately 8:45 pm on May 31, 2019 when Appellant turned on the floodlights. *Id.* at 12-14. Ms. Kane

described the lights as being so bright that they lit up her entire house and that they were visible "nine houses down." *Id.* at 12-13. Ms. Kane stated that the lights caused her annoyance and alarm as she was pregnant at that time and was unable to relax in her own home after a strenuous shift as a nurse. *Id.* at 13-14. Appellant stipulated that another neighbor, Andrea Veikle, would have testified at trial that the lights were on from 8:45 pm to 11 pm on May 31, 2019 and caused her annoyance and alarm. *Id.* at 14-15.

Lieutenant Charles Melhorn, the patrol commander of the Manheim Township Police Department on the evening of May 31, 2019, testified that he received a call for assistance at approximately 9:15 pm from the first officer responding to the scene who had made contact with Appellant but been unable to convince him to turn off the floodlights. *Id.* at 15-16, 19. When Lieutenant Melhorn arrived, he described Mr. Meglic's backyard as being "lit up like Wrigley Field," and he could not determine how many individual lights were present "because it was just a sea of light." *Id.* at 16. Lieutenant Melhorn further stated that "with the naked eye[,] you couldn't even look in the direction of the lighting arrangement." *Id.* at 16-17. The Manheim Township Police Department received seven or eight complaints in total regarding the lights, one from a house at least a hundred yards away from the offending lights. *Id.* at 17.

Lieutenant Melhorn and the other officer approached Appellant's house, and Appellant at first refused to turn the lights off, reasoning that because Manheim Township had informed him that Mr. Meglic's backyard lights were

not proscribed by local ordinance, he was not violating any law. *Id.* at 17-18, 21-22. Lieutenant Melhorn advised Appellant that he was committing a disorderly conduct offense and that the offense could be prosecuted as a misdemeanor if he refused to turn the lights off.[2] *Id.* at 18. Appellant still refused. *Id.* at 18-19. Eventually, after further pleas from the first officer who arrived on the scene, Appellant turned off the lights approximately 45 minutes after Lieutenant Melhorn's arrival. *Id.* at 19-20.

Appellant testified that he had previously hired an attorney to file a complaint with Manheim Township regarding his objection to the "totality of the lighting" in Mr. Meglic's backyard, including the string lights, a "green glow from the swimming pool," tiki torches, the motion-detecting security light, and the light from a fire pit on the property. *Id.* at 26. Appellant also asked his attorney to address the fire pit with the Township as his wife was a recent cancer survivor and the smoke was entering their house. *Id.* The Township agreed with Appellant's attorney that the fire pit violated the local burn ban but informed him that the local ordinance did not address lighting. *Id.* at 26-27. Appellant stated that he "put up the lights to make a statement" and he thought that if he was cited and fined for his conduct, he would later be able to go in front of a judge to explain why he did what he did and the judge would

_____

[2] *See* 18 Pa.C.S. § 5503(b) ("An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, or if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.").

also be able to address Mr. Meglic's lighting at the same hearing. *Id.* at 27, 29-30. Appellant admitted on cross examination that he had never approached Manheim Township in an effort to have them amend the ordinance to address excessive lighting. *Id.* at 30.

At the conclusion of trial, the trial court found Appellant guilty of disorderly conduct and imposed a fine of $200 plus costs. Appellant filed a timely appeal of the judgment. Appellant timely filed a statement of errors complained of on appeal as directed by the trial court, and the trial court issued its opinion on March 6, 2020.

Appellant raises the following issue on appeal: "Did the trial court err in determining that the evidence presented by the Commonwealth was sufficient to establish Appellant's guilt for disorderly conduct beyond a reasonable doubt?" Appellant's Brief at 2.

A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review under a *de novo* standard. ***Commonwealth v. Hitcho***, 123 A.3d 731, 746 (Pa. 2015). "When reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." ***Commonwealth v. Hill***, 210 A.3d 1104, 1112 (Pa. Super. 2019). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Id.* (citation omitted). "It is within the province of the fact-finder

- 5 -

to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Id.* Furthermore, "[t]he Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence." *Id.* "As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.*

As relevant to this case, an individual commits the crime of disorderly conduct:

> if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

18 Pa.C.S. § 5503(a)(4). Our Supreme Court has cautioned that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people" and "it is not to be used as a dragnet for all the irritations which breed in the ferment of a community." *Commonwealth v. Hock*, 728 A.2d 943, 947 (Pa. 1999) (citation omitted). Rather, the offense of disorderly conduct has the "specific purpose . . . to preserve the public peace." *Id.* (citation omitted); *see also Commonwealth v. Mauz*, 122 A.3d 1039, 1041 (Pa. Super. 2015). "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." *Hock*, 728 A.2d at 946 (citation omitted).

In *Commonwealth v. Williams*, 574 A.2d 1161 (Pa. Super. 1990), this Court observed that, "[a]lthough a precise definition of 'physically offensive

condition' is elusive, this term encompasses direct assaults on the physical senses of members of the public." *Id.* at 1164; *see also Commonwealth v. N.M.C.*, 172 A.3d 1146, 1150 (Pa. Super. 2017). We explained that a defendant can create a physically offensive condition if she invades the physical privacy of another in an extreme manner or "if she sets off a 'stink bomb', strews rotting garbage in public places, or shines blinding lights in the eyes of others." *Williams*, 574 A.2d at 1164 (citing Model Penal Code, § 250.2, Commentary at 347 (1980 ed.)). Conduct that is merely morally offensive but does not affect the physical senses of another does not rise to the level of disorderly conduct. *N.M.C.*, 172 A.3d at 1151-52; *Williams*, 574 A.2d at 1165.

On appeal, Appellant argues that the Commonwealth did not show that his actions created a "physically offensive condition."[3] 18 Pa.C.S. § 5503(a)(4). Appellant contends that his temporary use of bright lighting directed at one neighbor did not constitute the "public unruliness" that can lead to the "tumult and disorder" that the disorderly conduct statute was adopted to address. *Hock*, 728 A.2d at 946 (citation omitted). Rather, Appellant asserts that his actions fell short of the threshold for criminal liability

---

[3] Appellant also argues that there was insufficient evidence that the floodlights on his property were a "hazardous" condition. 18 Pa.C.S. § 5503(a)(4). However, as we affirm the trial court's conclusion that Appellant's actions created a "physically offensive condition," we need not address Appellant's argument that the Commonwealth failed to meet this alternate proof under the statute. *Id.*

and should have been addressed through a civil action for the abatement of a private nuisance.

Appellant further argues that the Commonwealth did not present sufficient evidence to prove the *mens rea* element of the disorderly conduct statute. Appellant contends that the Commonwealth only showed that he intended to resolve "a **private** dispute with his neighbor over backyard lighting . . . and not to cause inconvenience to the **public**." Appellant's Brief at 15 (emphasis added). Appellant argues that his neighbor's subjective complaints of annoyance from the floodlights did not show that he had the state of mind to commit the disorderly conduct offense.

Finally, Appellant argues that the Commonwealth failed to prove that he lacked a "legitimate purpose" for his actions. 18 Pa.C.S. § 5503(a)(4). Appellant argues that his light display had a legitimate purpose because his actions were a protest against Manheim Township's lack of light regulation that he felt had adversely affected his quality of life. Moreover, Appellant asserts that his conduct was lawful because it was not prohibited by local ordinance nor had it been shown to be illegal under any other applicable law.

In concluding in its Pa.R.A.P. 1925(a) opinion that there was sufficient evidence to support the conviction, the trial court stated:

> In this matter, the trial court firmly believes that the totality of the evidence presented at trial established that [Appellant's] actions supported his conviction for the summary offense of Disorderly Conduct. Through the testimony of its witnesses, the Commonwealth established [Appellant] was dissatisfied with Mr. Meglic's use of swimming pool lights, patio light strands, and a motion-sensor [] spotlight. After determining that Manheim

Township did not have a municipal lighting ordinance to prevent Mr. Meglic's "totality of lighting", [Appellant] purposely acquired eight construction-grade lights to illuminate Mr. Meglic's yard. Despite the assertion that such actions were a "protest" and legally permissible, [Appellant] presented no authority at trial to support this conclusion. While this court values an individual's inherent right to undertake peaceful protest, it is noted that there was nothing peaceful about [Appellant's] purported protest. Rather, the Commonwealth's witnesses Mr. Meglic and Ms. Kane testified that the [Appellant's] conduct was physically offensive to them, other neighbors, and their homes. The photographic evidence at trial further supported the blinding nature of [Appellant's] lights. There is simply no doubt that [Appellant's] actions were intended to cause public inconvenience, annoyance, or alarm and that [Appellant] created a hazardous or physically offensive condition by an act which served no legitimate purpose.

Trial Court Opinion, 3/6/20, at 6.

Our review of the record supports the trial court's conclusion. The evidence at trial established that Appellant created a physically offensive condition by shining eight construction-grade floodlights towards his neighbors. That the "blinding light" from Appellant's floodlights was a "direct assault[] on the physical senses of members of the public," **Williams**, 574 A.2d at 1164, was confirmed by the testimony of Appellant's neighbors, including Ms. Kane who stated that she could not relax in her own home because of the bright light coming through all of her windows.[4] In addition,

_____

[4] Appellant also argues that our statement in **Williams** that "shin[ing] blinding lights in the eyes of others" constitutes a physically offensive condition was dicta derived from commentary to the Model Penal Code and therefore there is no direct authority to support his conviction. 574 A.2d at 1164. Appellant is correct that **Williams** did not concern a public disturbance related to excessive light. **See id.** at 1164-65 (holding that the defendant's actions of walking around an apartment complex parking lot in his underwear did not

the floodlights confused a child playing in Mr. Meglic's pool when the lights were lit. That the lights were far beyond the standard level of lighting in the community was confirmed by Lieutenant Melhorn who stated that the neighborhood was lit like a major league baseball stadium, it was uncomfortable to look directly at the source of the light with the naked eye, and he could not make out how many individual floodlights there were "because it was just a sea of light." N.T., 12/18/19, at 16; **cf. Commonwealth v. Forrey**, 108 A.3d 895, 899 (Pa. Super.2015) (reversing disorderly conduct conviction where the Commonwealth did not show that the noise created by the defendant in rural area "out of hearing of any residential hearing or neighborhood" was "inconsistent with the standards of a recognized neighborhood or community").[5]

_____

constitute a physically offensive condition). However, **Williams** merely offered shining blinding light at others, along with setting off stink bombs and strewing rotting garbage in public, as examples illustrating what kinds of behavior could meet the standard for a physically offensive condition as a "direct assaults on the physical senses of members of the public." **Id.** at 1164. We are not persuaded by Appellant's claim that an absence of direct authority applicable to the facts of his case means that his actions can go unpunished; no rule exists requiring that the Commonwealth be able to cite an appellate decision on all fours for each new prosecution that it brings.

[5] **Forrey** concerned a disorderly conduct prosecution under Section 5503(a)(2) of the Crimes Code for "mak[ing] unreasonable noise" rather than for creating a "physically offensive condition" under Section 5503(a)(4). 18 Pa.C.S. § 5503(a)(2), (4). Under Pennsylvania law, a noise is unreasonable for the purpose of the disorderly conduct statute where it is "not fitting or proper in respect to the conventional standards of organized society or a legally constituted community" or "inconsistent with neighborhood tolerance or standards." **Forrey**, 108 A.3d at 898 (quoting **Commonwealth v. Gilbert**,

The evidence further established that the harmful effect of the floodlights was not solely felt by Mr. Meglic, the neighbor with whom Appellant had a grievance; the police received at least seven complaints, including from a house approximately 100 yards away from Appellant's, and Ms. Kane stated that the light reached a house nine houses away from Appellant's property. Unlike other cases where this Court has reversed disorderly conduct convictions based on the fact that the public disturbance was brief and confined in scope, Appellant here refused to turn off the floodlights when first requested by the police and let the light permeate the neighborhood for approximately two hours in total. *Cf. Mauz*, 122 A.3d at 1043 (Commonwealth did not prove disorderly conduct beyond a reasonable doubt where defendant briefly shouted insults over his fence and only one neighbor could hear); *Commonwealth v. Maerz*, 879 A.2d 1267, 1271 (Pa. Super. 2005) (defendant's "single sentence outburst" directed at neighbor did not jeopardize public peace sufficient to support disorderly conduct conviction).

We likewise disagree with Appellant's assertion that the Commonwealth did not prove that he had the requisite *mens rea*. "The *mens rea* requirement of th[e disorderly conduct] statute demands proof that appellant by his actions

---

674 A.2d 284, 287 (Pa. Super. 1996)) (emphasis omitted); **see also Commonwealth v. Maerz**, 879 A.2d 1267, 1270 (Pa. Super. 2005). While not entirely dispositive in our current case, we find these standards useful in our analysis of whether the light created by Appellant's floodlights rose to the level of offensiveness that they would constitute a "direct assault[] on the physical senses of members of the public." **Williams**, 574 A.2d at 1164.

intentionally [caused] or recklessly created a risk [of causing] a public inconvenience, annoyance or alarm." ***Commonwealth v. Gilbert***, 674 A.2d 284, 286 (Pa. Super. 1996); ***see also*** 18 Pa.C.S. § 5503(a) (defendant must act with the "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof"). "The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." ***Maerz***, 879 A.2d at 1269 (citation and quotation marks omitted).

Appellant stated at trial that he lit the floodlights with the purpose of having his neighbors call the police and for him to be cited for an offense such that he could go before a judge and explain the harm that he felt from Mr. Meglic's backyard lighting. N.T., 12/18/19, at 29-30.[6] As Appellant explained, "if I put these lights up, I'm making a statement to both [Mr. Meglic] and the Township [that] if there's no ordinance for lighting, this is what happens." ***Id.*** at 27. By his own words, then, Appellant admitted that he specifically

_____

[6] Appellant testified:

> In my naivety, I thought what would transpire would -- they would call the police, he would -- he would fine me. . . . I thought he would fine me in some way and then I'd have to go before a judge and explain why I did this. And then a judge would say, well, why didn't you make them turn those lights off since they were impeding in my quality of life.

N.T., 12/18/19, at 29-30.

- 12 -

intended to create a public disturbance that would lead to him being cited for an offense so that he could have his proverbial day in court. Moreover, Appellant intentionally kept the offensive condition in place for several minutes after requests by the police to turn off the lights, including after being informed by Lieutenant Melhorn that he would be arrested and charged with a misdemeanor for his refusal. *Id.* at 18-19, 29. The evidence at trial therefore established that Appellant intentionally caused public inconvenience, annoyance, or alarm as required by the disorderly conduct statute. *Cf. Commonwealth v. Roth*, 531 A.2d 1133, 1136-37 (Pa. Super. 1987) (holding that defendants intended to create public inconvenience, annoyance, or alarm when they were "apprised of the fact that neither their physical presence nor their symbolic offering were wanted" at a church yet they "intentionally disregarded this notice and plodded onward to address an audience that specifically did not wish to receive their message").[7]

_____

[7] In arguing that his sole intention was to send a message to Mr. Meglic rather than his neighbors more generally, Appellant relies on *Commonwealth v. Coon*, 695 A.2d 794 (Pa. Super. 1995), in which we reversed a disorderly conduct conviction for shooting four rounds into the air because the defendant only intended to cause private – not public – inconvenience or harm by sending his neighbor a message to keep his own noise levels down. *Id.* at 796-99. *Coon*, however, concerned a disorderly conduct conviction graded as a misdemeanor of the third degree, which requires a higher *mens rea* showing that "the intent of the actor is to cause substantial harm or serious inconvenience." 18 Pa.C.S. § 5503(b). Furthermore, our Supreme Court later concluded that the *mens rea* standard espoused in *Coon* held the Commonwealth to a stricter proof than required by the disorderly conduct statute. *See Commonwealth v. Fedorek*, 946 A.2d 93, 101-02 & nn. 6, 7 (Pa. 2008) (holding that the Commonwealth can prove a disorderly conduct

Finally, we agree with the trial court that Appellant's actions had no legitimate purpose. This Court has held that a "legitimate purpose" under the disorderly conduct statute encompasses "conduct which is lawfully and constitutionally protected." *Id.* at 1137. While Appellant may not have broken any other laws aside from the disorderly conduct statute by turning on the floodlights, we find no support for the proposition that his actions were "constitutionally protected." *Id.* Appellant does not specifically invoke the protections of the free speech clause of the First Amendment, and we are doubtful that by turning on extremely bright floodlights Appellant conveyed a sufficiently "particularized message" such that it could be considered expressive conduct protected by the First Amendment. *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (citation omitted).

Even to the extent Appellant could claim to have been exercising his right to free speech by turning on the floodlights as a "protest," Appellant's Brief at 18, his attempt to evade liability for disorderly conduct fails because he did not exercise his rights in a reasonable manner. In **Commonwealth v. Gowan**, 582 A.2d 879 (Pa. Super. 1990), we addressed a challenge to disorderly conduct convictions for unreasonable noise based on the defendants' loudly preaching in a public park. *Id.* at 880. We observed that

---

graded as a misdemeanor by showing that the offender intended to cause substantial harm or serious inconvenience without the harm or inconvenience being intentionally directed toward the public). Therefore, **Coon** does not guide our current analysis with respect to the *mens rea* showing necessary to prove disorderly conduct graded as a summary offense.

courts must be careful in balancing the First Amendment right of the speaker against the potential public disturbance or annoyance caused to listeners, but that "[i]t is incontrovertible that the exercise of free speech can go beyond constitutionally protected boundaries to the realm of prohibited and criminal behavior." *Id.* at 881; *accord Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008). Thus, we held that "when a protected first amendment right to free speech is implicated," a disorderly conduct conviction will stand only when "the actor intend[s] to breach the public peace by making unreasonable noise." *Gowan*, 582 A.2d at 882 (emphasis omitted); *accord Diener v. Reed,* 77 Fed.Appx. 601, 609-11 (3d Cir. 2003).

In *Gowan*, we held that the preachers did not intentionally breach the public peace by making unreasonable noise and therefore the defendants' convictions were inconsistent with the exercise of their First Amendment rights. *Id.* at 883. While it was apparent from the record in *Gowan* that the preaching was annoying to many who heard it, the "treatment of the sound emanating [from the defendants] as 'unreasonable noise,' depend[ed] more upon the [lack of] acceptance of the" defendants based upon their preaching in the Anabaptist faith and plain dress "than on the actual noise produced." *Id.* We further noted that the park was traditionally "used for other religious, secular, political and entertainment purposes with varying degrees of loudness" and that the preaching took place "when the surrounding volume of noise from traffic and other activities was at the noon time peak." *Id.*

By contrast, in **Roth**, we rejected the argument that the defendants were improperly convicted of disorderly conduct for creating a hazardous condition because they were engaged in constitutionally protected activity in protesting outside a church.  In **Roth**, church leaders denied the defendants the opportunity to address the congregation on Easter Sunday, but the defendants nevertheless congregated outside the church and attempted to enter during the service.  531 A.2d at 1136.  We concluded that, while standing on the sidewalk and protesting their lack of access to the church was constitutionally protected, the defendants "abandon[ed] the protection afforded by the First Amendment" when "they moved to gain entry of a church in which they were adamantly unwelcome" in order "to inflict their viewpoint on its congregation."  **Id.** at 1137-39.  We held that the defendants' actions "transgressed from peaceful protest to civil disobedience" and therefore lacked a legitimate purpose under the disorderly conduct statute.  **Id.** at 1137-38.

Applying these standards to the present case, the record firmly establishes that Appellant "intend[ed] to breach the public peace by" casting an unreasonable amount of light in his neighborhood.  **Gowan**, 582 A.2d at 882 (emphasis omitted).  As explained above, Appellant intentionally lit the floodlights from his back deck in order to create a public disturbance that would lead to the police being called.  Appellant then persisted in keeping the floodlights lit even after being advised of the disturbance that he was causing.  Furthermore, the amount of light was clearly unreasonable as it was far in excess of the standard lighting level within his residential neighborhood.

Unlike in **Gowan** where the loud preaching occurred in a public park where loud voices were not uncommon and park goers could choose to move away from any disturbance, Appellant's floodlights here penetrated the windows of nearby houses causing his neighbors to be unable to enjoy the tranquility of their own homes. Therefore, we conclude that Appellant did not have a legitimate purpose for his use of the floodlights.

Accordingly, Appellant is not entitled to relief on his claim that the Commonwealth failed to produce sufficient evidence to support his conviction for disorderly conduct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2020

- 17 -