J-A06016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JUSTIN MARTINEZ | : | |
| | : | |
| Appellant | : | |
| | : | |
| | : | No. 600 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 22, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000231-2020,
CP-65-CR-0005559-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUSTIN JUAN DE LA CRUZ MARTINEZ | : | |
| | : | |
| Appellant | : | No. 601 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 22, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000231-2020,
CP-65-CR-0005559-2019

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

JUDGMENT ORDER BY PANELLA, P.J.E.:          **FILED: MARCH 4, 2024**

Justin Martinez appeals from the judgment of sentence entered in the
Court of Common Pleas of Westmoreland County on May 22, 2023 at docket
Nos. 5559-2019 and 231-2020. After careful review, we conclude Martinez's
brief violates the Pennsylvania Rules of Appellate Procedure to such a degree

that it impedes our review. The only contention raised in Martinez's brief is a rambling narrative which restates his factual defense at the time of trial, which was rejected by the finder of fact. Although we could dismiss this appeal on this basis alone, we adopt the trial court's well-written and comprehensive OPINION PURSUANT TO RULE 1925, dated July 20, 2023, which is attached hereto, as it explains that the verdicts were based upon competent and substantial evidence.

This case is to be removed from the Argument list of March 5, 2024.

Judgment of Sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: 3/4/2024

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY
COMMONWEALTH OF PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
                                )
            v.                  )        Nos. 5559 C 2019
                                )             231 C 2020
                                )
JUSTIN JUAN DE LA CRUZ MARTINEZ, )
                    Defendant.   )

## OPINION PURSUANT TO RULE 1925

AND NOW, this _20_ day of July, 2023, the Court files the herein Rule 1925(a) Opinion following the filing of the Defendant's Notices of Appeal and Concise Statement of Errors Complained of on Appeal:

### No. 5559 C 2019

On November 20, 2019, a criminal complaint was filed charging the defendant with Disorderly Conduct, 18 Pa.C.S. §5503(a)(4), and Resisting Arrest, 18 Pa.C.S. §5104. These charges arose out of an incident where the defendant was alleged to have videorecorded the secure area of the communications room at the Pennsylvania State Police Kiski Valley barracks, refused to comply with police directives to surrender the recording, and forcibly resisted police efforts to obtain the recording.

On December 23, 2019, the defendant waived counsel and appeared *pro se* before Magisterial District Judge Jason Buczak for a preliminary hearing. At the conclusion of the evidence, all charges were held for court.

EXHIBIT 2

On January 27, 2020, a Criminal Information was filed, charging the defendant with Disorderly Conduct, 18 Pa.C.S. §5503(a)(4), and Resisting Arrest, 18 Pa.C.S. §5104.

On February 25, 2020, the defendant was formally arraigned on the Commonwealth's Information.

On March 12, 2020, the Commonwealth filed a Notice consolidating this case with No. 231 C 2020.

## No. 231 C 2020

On December 3, 2019, a criminal complaint was filed charging the defendant with Trespass, 18 Pa.C.S. §3503(b)(1)(v), and Disorderly Conduct, 18 Pa.C.S. §5503(a)(4). These charges arose out of an incident at the start of the school day on November 19, 2019, where it was alleged that the defendant, wearing a unicorn head mask and carrying a sign, stood on the property of the Derry Area High School and on the berm of the road immediately adjacent to the school's driveway, impeding entry into the school and distressing students, parents, and teachers, at a time after written notice was given to him that he was not permitted on school property.

On January 15, 2020, the defendant waived counsel and appeared *pro se* before Magisterial District Judge Mark Bilik for a preliminary hearing. At the conclusion of the evidence, all charges were held for court.

On March 12, 2020, a Criminal Information was filed, charging the defendant with Defiant Trespass, 18 Pa.C.S. §3503(b)(1)(v), and two counts of Disorderly Conduct, 18 Pa.C.S. §5503(a)(4).

On March 12, 2020, the Commonwealth filed a Notice consolidating this case with No. 5559 C 2019.

2

On June 9, 2020, the defendant was formally arraigned on the Commonwealth's Information.

## Nos. 5559 C 2019 and 231 C 2020

On September 18, 2020, and November 9, 2020, the defendant *pro se* filed fourteen motions. These were heard by the Honorable Christopher A. Feliciani on January 13, 2021, and resolved by agreement or order.

On February 5, 2021, the Commonwealth filed a motion to modify the defendant's bail.

On February 8, 2021, the defendant *pro se* filed eight additional motions. These were heard on February 19, 2021, and, after an evidentiary hearing, denied.

On February 8, 2021, after an evidentiary hearing, the Court ordered modification of the defendant's bond to include conditions of home electronic monitoring and no internet access until further order of court. The Court also directed the defendant to remove the video from social media which was the subject of the Commonwealth's motion.

On February 16, 2021, the Court ordered the defendant to obtain a psychiatric evaluation.

On February 19, 2021, the defendant *pro se* filed an additional three motions. These were denied by Court Order dated February 22, 2021.

On February 22, 2021, and February 25, 2021, the defendant *pro se* filed an additional four motions. On March 1, 2021, the Office of the Public Defender of Westmoreland County entered its appearance on defendant's behalf. On March 2, 2021, the Court issue an Order denying the defendant's *pro se* motions without prejudice to re-filing as counseled motions.

3

On May 26, 2021, defendant, through counsel, filed a Petition for Writ of Habeas Corpus. An evidentiary hearing on this motion was held on September 8, 2021, December 13, 2021, and December 15, 2021. Habeas Corpus relief was denied by Order dated December 15, 2021.

On July 12, 2021, defendant, through counsel, filed a motion for bond modification. On July 23, 2021, the Court granted defendant's motion and ordered that he be released from home electronic monitoring and participate in recommended treatment.

On October 12, 2021, counsel moved to withdraw from representation, citing disagreements between the defendant and counsel. On October 26, 2021, after a hearing, the Court granted leave for the Office of the Public Defender to withdraw and, at the defendant's request, appointed stand-by counsel.

On November 15, 2021, after new criminal charges were filed against the defendant, a detainer was issued directing that the defendant be incarcerated. On December 1, 2021, after a hearing, the Court denied that Commonwealth's motion to revoke bond and ordered that the defendant be released on home electronic monitoring.

On February 8, 2022, a hearing was held on several motions that were filed by the defendant. At the conclusion of the hearing, the Court ordered that additional discovery materials be provided to the defendant and that the defendant be released from home electronic monitoring.

By Order dated April 14, 2022, the Court directed that the defendant's two cases which were consolidated be listed for a jury trial.

By Order dated July 13, 2022, the Court denied the defendant's request to consolidate new criminal charges at No. 338 C 2022 for trial with the two cases captioned above.

On August 22, 2022, trial commenced before Judge Feliciani, sitting with a jury. On August 29, 2022, at No. 5559 C 2019, the jury returned verdicts of guilty as to Count 1 (Disorderly

4

Conduct) and not guilty as to Count 2 (Resisting Arrest) and, at No. 231 C 2020, verdicts of not guilty as to Count 1 (Defiant Trespass) and guilty as to Count 2 (Disorderly Conduct). Sentencing was deferred pending a pre-sentence investigation.

On September 7, 2022, defendant *pro se* filed eight motions seeking various forms of post-trial relief.

On September 9, 2022, defendant filed a Notice of Appeal with the Superior Court of Pennsylvania, docketed at No. 1037 WDA 2022. On January 27, 2023, this appeal was quashed after the Superior Court found that it was premature. On March 14, 2023, the record was remanded/remitted to the trial court.

On March 30, 2023, Judge Feliciani recused himself from further proceedings in all three cases involving the defendant, including the two which are the subject of this Court's opinion pursuant to Rule 1925.

On May 22, 2023, the undersigned, having assumed judicial responsibility for the cases docketed at the above numbers and terms, sentenced the defendant at No. 231 C 2020 to a period of incarceration for fifteen days to one year, with credit for fifteen days which were previously served. The defendant was further awarded credit for the time served on home electronic monitoring and supervision was closed. At No. 5559 C 2019, the defendant was sentenced to a period of incarceration for fifteen days to one year, with credit for fifteen days which were previously served, concurrent with the sentence imposed at No. 231 C 2020. The defendant was further awarded credit for the time served on home electronic monitoring and supervision was closed.

On May 23, 2023, the defendant timely filed an appeal to the Pennsylvania Superior Court. Further, the defendant timely filed a Concise Statement of Errors Complained of on Appeal raising

5

the following issues: the sufficiency of the evidence regarding the conviction at No. 231 C 2020, arguing that his conduct was in furtherance of a legitimate purpose of protesting; the sufficiency of the evidence regarding the conviction at No. 5559 C 2019, arguing that his conduct was in furtherance of a legitimate purpose of filing a complaint with the Pennsylvania State Police; and the propriety of the jury instruction on Disorderly Conduct regarding evaluation of the alleged conduct using a standard of reasonableness instead of individual intent.

This Opinion is in support of the Order of Sentence imposed on May 22, 2023, at both case numbers.


## Statement of Facts

The facts, adduced from the testimony at trial, read in the light most favorable to the Commonwealth,[1] may be summarized as follows:

On or about August 29, 2019, Justin Juan de La Cruz Martinez (hereinafter "the defendant") emailed Eric Curry (hereinafter "Curry"), the superintendent of Derry Area School District, and Rod Bisi (hereinafter "Bisi"), the principal of Grandview Elementary School, requesting to come to Grandview School as part of his anti-bullying campaign. (TT 316-321; 368; 533)[2] On behalf of the school district, Ned Nakles, Esq, the district's solicitor, sent Martinez a cease-and-desist letter directing the defendant to stay off school grounds and stating that the police would be alerted and it would be considered trespass should Martinez enter school property. (TT 379-381; 383-384;431;583) Nakles further advised the defendant that the school district could not

---

[1] See discussion below.

[2] The letters "TT" followed by numerals refer to the transcript of the trial.

6

control his movements outside of school property so long as the defendant did not interfere with the school activities or transportation. (TT 353;403-404; 409; 411; 413-414; 417) The defendant, upon receiving the denial from Curry and Nakles, informed them that he would be at Grandview School on November 7, 2019, regardless of whether the district supported his presence. (TT 341; 343; 345; 376; 383; 410; 421)

On November 7, 2019, the defendant stood beside State Route 982, outside of the entrance of Grandview School in Derry, Westmoreland County, Pennsylvania, wearing a unicorn mask and holding an anti-bullying sign. (TT 354; 404-405; 427; 437; 522) At about 7:30 a.m., the school began to field telephone calls from parents who were concerned for their children's safety and confused about the defendant's presence near the school. (TT 405; 415; 419-420; 422; 453; 459; 462;472-475; 481-487; 505-508; 511; 516; 557-560) Some parents reported to the school and police that the defendant was standing on school property. (TT 435-441; 447; 450; 466-468; 530; 560; 562) Additionally, cars had begun to redirect and switch lanes, honking at each other, attempting to avoid the defendant and slowing down, affecting the transportation of students to the school. (TT 405; 415; 419-420; 422; 450; 454; 470; 578; 594; 598; 620) The traffic worsened as students arrived and worsened again when the police arrived on scene. (TT 601; 631; 1180)

Thomas Esposito, (hereinafter, "Esposito"), was the school's safety officer at the time of the incident. When he arrived on campus, he was not initially concerned by the defendant's presence as he mistook the defendant for the Chic-fil-A cow. (TT 576-577) Upon entering the school, Esposito was summoned to the office, informed of the evolving situation, and told to go look into the scene near the road. He observed the defendant standing near the school's marquee. (TT 576) Esposito's main objective was to ensure the safety of the building. (TT 576) He was concerned for the safety and welfare of staff and students in relation to the defendant, as well as

7

possible traffic issues. (TT 578) Esposito had been made aware of the fact that the defendant had been disallowed from being on school property that day and became concerned that the defendant was the masked individual. (TT 583)

Jeff Kelly, the dean of students for the middle and high school, received a call of a masked individual walking around the school premises. (TT 646-648) He testified that the situation gave him a feeling of "angst" as students had begun to arrive on campus and there was expected to be over a thousand students present that day. (TT 650; 646; 649; 668; 672; 679) Kelly had been made aware of the defendant's social media posts and apparent plans to protest on November 7 as well as the fact that he had been disallowed from being on campus that day. (TT 667; 669; 671; 673) Kelly could not positively identify the area on which the defendant was standing as school property. (TT 660)

Kelly reported the defendant's presence to Casey Long (hereinafter, "Long"), the principal of the high school. Long immediately called the superintendent and the police reporting the defendant as a masked person causing concerns of violence and a threat to safety to his students. (TT 589; 592; 594; 595; 597; 598; 620; 621) Long also reported that he thought the masked individual could be the defendant and reported this possibility to the police. Long could not say positively that the defendant was on school property, just that he was "pretty darn close." This proximity justified calling the authorities to ascertain whether or not there was a threat to the safety of the school. (TT 597; 629) When more students began to arrive on campus and the police had not yet arrived, Long called the police for a second time. Long also reported to the police that he thought the masked individual could be the defendant as he was aware that the defendant had been denied access to the school that day.

8

Police Officer Randy Glick, (hereinafter, "Glick") received the report that the defendant was on school property, despite being previously disallowed from being there. (TT 753) Glick was somewhat familiar with the defendant as he had spoken with the defendant on previous occasions regarding his protests. (TT 754) When he arrived at the school, Glick walked over to the defendant and asked him what he was doing and informed him of the reports of trespassing. (TT 1169)

Pennsylvania State Police Trooper Stephanie Smith (hereinafter, "Stephanie Smith") arrived on scene after receiving a report of a masked individual outside of Grandview School who was causing alarm to parents and staff. (TT 712; 732-733) Pennsylvania State Police Trooper Ty Smith (hereinafter, "Ty Smith") received similar reports and proceeded to the scene with lights and siren activated, as is protocol for responding to school concerns, especially with the "school-shooter culture." (TT (683; 685-686) When he got there, he noted that traffic was heavy, as students had begun to arrive. (TT 688) When Stephanie Smith arrived, she observed the defendant on the berm of the road, walking across the driveway of the school, which she believed to be school property. (TT 714-715; 718; 720; 723; 861-862) Upon exiting her vehicle, Stephanie Smith requested that the defendant remove the unicorn mask and show a photo ID. (TT 1173) The defendant removed the unicorn mask, revealing another mask underneath, and showed Stephanie Smith a card which identified him as "the Bully Monster." (TT 719; 882-883; 1171-1173; 1176) When he removed his mask, Ty Smith recognized him from a social media post about a situation in Derry. (TT 690) Glick also recognized the defendant when he removed his unicorn mask. (TT 754) The defendant then gave Stephanie Smith his Pennsylvania driver's license. (TT 1177)

The troopers considered that the defendant was exercising his right to protest but were concerned that he was protesting in a way that was causing a disruption and creating a safety hazard for students, staff, parents, and troopers. (TT 766-768) Ty Smith also agreed that the

defendant, by protesting, was exercising his civil rights. (TT 739) After reviewing maps of the area and considering where the defendant was standing, it was decided that a disorderly conduct charge was appropriate. (TT 693; 703) At trial, Glick testified that this incident represents disorderly conduct "all day long." (TT 788) Glick, at that time, did not file the official charge for trespassing, as nobody presented him with evidence that the defendant had been on school property. (TT 769)

The troopers pointed out the traffic issues to the defendant, but he disagreed that the traffic was anything worse than normal school drop-off traffic. (TT 1180) Ty Smith asked the defendant to leave, but the defendant asserted that he was exercising his rights and was attempting to attract attention to the issue of bullying. (TT 1185) The defendant then asked the troopers if he was trespassing and stated that, if they could not positively identify the area on which he was standing as school property, it was his intention to stay and protest. (TT 1189) Stephanie Smith then informed the defendant that it was her intention to arrest him unless he left the school area, citing the reports from parents who believed the defendant was trespassing on school property, as well as the disruptive nature of the situation as reason for the possible arrest. (TT 728; 864-866; 1196) The defendant asked the troopers for a phone number to call to reach their superiors, which they gave him. (TT 1197) At this point, the defendant left the area of the school. (TT 1197) After the defendant left, the troopers radioed the barracks to alert them that the situation had been handled. (TT 732; 737) Stephanie Smith testified that she regarded the defendant as a threat because he made a comment that he would be back and that he enjoys confrontation. (TT 736) After reviewing the evidence of this incident Pennsylvania State Police Corporal Judson Shephard, (hereinafter, "Shephard"), testified that the "totality of the circumstances" was creating a hazardous situation, especially given the roadside nature of the interaction with Martinez. (TT 867-868)

10

At trial, the defendant provided character witnesses who testified to his peaceful nature (TT 932; 940; 954; 960; 962; 966; 975; 982). He also showed numerous photos and videos of his prior protests, in which he can be seen wearing masks and waving anti-bullying sign (TT 1080-1086; 1102-1130).

On or about November 19, 2019, the defendant proceeded to the Pennsylvania State Police Barracks in Kiski Valley.[3] Prior to his arrival at the barracks on November 19, 2019, the defendant called Mia Provenzo (hereinafter, "Provenzo"), the communications officer at the time of the incident. In this call, he reported that he was going to come to the barracks in relation to filing complaints. (TT 794; 1201) Upon arrival in the lobby, the defendant called Provenzo again to alert her that he was there. (TT 797) Provenzo advised the defendant that he would not be able to record in the restricted area or have his phone pointed toward the window. (TT 825) The restriction on recording is also posted inside the barracks, as this is an issue addressed with any individual who enters the lobby. (TT 829) Provenzo alerted Shephard of the defendant's arrival at the barracks. The defendant inquired as to the status of his previously filed complaints, as this was the eighth day after they had been filed. (TT 833-834)[4] Shephard instructed him to slide any new complaints under the window. Because one of the complaints was against Shephard, the defendant did not want to directly give him the complaint, so he refused to slide it under the window and sat down.

---

[3] Prior to this date, he had filed a verbal complaint against Stephanie Smith and Ty Smith, alleging a false arrest in relation to the events which transpired on November 7, 2019. (TT 823; 850; 853; 1199) While he was at the barracks previously, the defendant was recording with his cellphone, but was not directing the recording towards the window or the restricted area, so this recording was not considered problematic at the time. (TT 825; 829; 876; 1204) Shephard, who received the complaint, advised the defendant that he would have information about the complaint in a week. (TT 834; 870-872)

[4] In addition to those against Stephanie Smith and Ty Smith, the defendant had filed complaints against Corporal Shephard, Sergeant Stallone, and an internal affairs officer. (TT 1200; 1211)

(TT 820 834; 873; 1203) Because, the defendant was recording this interaction, Shephard gave him orders to not record in the direction of the restricted area. Shephard could not tell if the defendant was recording the secured area with the front camera or himself with the back camera. (TT 902-903) The defendant continued to record, ignoring Shephard's orders to hold his phone out to the side. Every time the defendant would move his phone to the side, he would immediately bring it back to the front, recording toward the restricted area. (TT 879-881; 891-892; 899-900; 1204) Shephard was concerned about Martinez recording classified and confidential information, including information regarding victims and arrestees, that could be available in the restricted area. (TT 837) Because of these concerns, Shephard attempted to seize the defendant's phone, resulting in a struggle. (TT 820 835-836; 840; 896-897; 1206-1208) Shephard ordered the defendant to get on the ground and told him that he was under arrest, at which point the struggle ceased. (TT 813-816; 841; 1208) Martinez was placed under arrest, handcuffed, patted down, and escorted to the patrol room. Following this incident, Shephard filed criminal charges against the defendant. (TT 830; 838) The defendant's cell phone was confiscated, a search warrant was secured, and the videos of the incident were recovered from the phone. (TT 832) Shephard testified that the defendant "disrupted operations of my dispatcher, another crime corporal, a crime unit member," as well as his own efforts to oversee patrol duties. (TT 837; 881)

## I.    Sufficiency of the Evidence

The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt." Commonwealth

12

v. Devries, 112 A.3d 663, 667 (Pa. Super. 2015) (citations omitted); Commonwealth v. Barkman, -- A.3d --, 2023 Pa. Super. 87, at *15 (May 19, 2023); and Commonwealth v. Arias, 286 A.3d 341, 349 (Pa. Super. 2022). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." Commonwealth v. Antidormi, 84 A.3d 736, 756 (Pa. Super. 2014), app. den., 626 Pa. 681, 95 A.3d 275 (2014); Commonwealth v. Estepp, 17 A.3d 939, 943 (Pa. Super. 2011)(citing Commonwealth v. Brooks, 7 A.3d 852, 856-857 (Pa. Super. 2010)); Commonwealth v. Becker, No. 1841 MDA 2019, 2021 WL 1561383, at *4 (Pa. Super. Ct. April 21, 2021)(non-precedential decision); and Commonwealth v. Zarnoch, No. 105 MDA 2020, 2021 WL 1328798, at *2 (Pa. Super. Ct. April 9, 2021)(non-precedential decision) .

The prosecution must be given the benefit of all reasonable inferences to be drawn from the evidence. Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000)(citations omitted); Commonwealth v. Buchanan, No. 858 MDA 2020, 2021 WL 944420, at *4–5 (Pa. Super. Ct. March 12, 2021)(non-precedential decision). The factfinder is free to believe all, part, or none of the evidence, and credibility determinations rest solely within the purview of the factfinder. Commonwealth v. Treiber, 874 A.2d 26, 30 (Pa. 2005); Commonwealth v. Watson, No. 1694 EDA 2019, 2020 WL 5269916, at *5 (Pa. Super. Ct. September 4, 2020)(non-precedential decision); and Antidormi, 84 A.3d at 756. Moreover, any doubts concerning a defendant's guilt are to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence. Commonwealth v. Kane, 10 A.3d 327, 332 (Pa. Super. 2010), app. den., 29 A.3d 796 (Pa. 2011); and Commonwealth v. Martin, No. 1361 MDA 2019, 2020 WL 3960350, at *2 (Pa. Super. Ct. July 13, 2020)(non-precedential decision).

Finally, although a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty, Commonwealth v. Martuscelli, 54 A.3d 940, 947 (Pa. Super. 2012); Martin, at *2, or preclude every possibility of innocence. Barkman, at *15; Commonwealth v. Knox, 219 A.3d 186, 195 (Pa. Super. 2019), app. den., 228 A.3d 256 (Pa. 2020); Commonwealth v. Melvin, 103 A.3d 1, 39-40 (Pa. Super. 2014); and Commonwealth v. Bailey, No. 1220 EDA 2020, 2021 WL 655439, at *11 (Pa. Super. Ct. February 19, 2021)(non-precedential decision).

The defendant was convicted at each case of Disorderly Conduct, 18 Pa.C.S. §5503(a)(4). "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he ... creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4). The offense of disorderly conduct has the "specific purpose ... to preserve the public peace." Commonwealth v. Hock, 728 A.2d 943, 947 (Pa. 1999) (citation omitted). "The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." Hock, 728 A.2d at 946 (citation omitted). The goal of Section 5503 is to protect the community from public unruliness leading to tumult or disorder; it is not a "catchall for every act which annoys or disturbs people." Commonwealth v. Mauz, 122 A.3d 1039, 1041 (Pa. Super. 2015) (quoting Commonwealth v. Maerz, 879 A.2d 1267, 1269 (Pa. Super. 2005)). Commonwealth v. Coniker, 290 A.3d 725, 735 (Pa. Super. 2023). "It has a specific purpose; it has a definite objective, it is intended to preserve the public peace." Mauz, 122 A.3d at 1041 (citation omitted). Commonwealth v. Brolin, No. 1233 WDA 2022, 2023 WL 4173820, at *6 (Pa. Super. Ct. June 26, 2023)(non-precedential decision).

14

"First, Section 5503 requires proof that the defendant had one of two alternative mental states: "intent to cause public inconvenience, annoyance or alarm, *or* recklessly creating a risk thereof." 18 Pa.C.S.A. § 5503 (emphasis added). The Commonwealth can thus sustain a disorderly conduct conviction with evidence that the defendant recklessly created a risk of public inconvenience, annoyance, or alarm, even if he lacked the intent to do so. Commonwealth v. Troy, 832 A.2d 1089, 1094 (Pa. Super. 2003) (citing Commonwealth v. Kidd, 442 A.2d 826, 827 (Pa. Super. 1982))." Coniker, 290 A.3d at 735. "The *mens rea* requirement of th[e disorderly conduct] statute demands proof that appellant by his actions intentionally [caused] or recklessly created a risk [of causing] a public inconvenience, annoyance or alarm." Commonwealth v. Gilbert, 674 A.2d 284, 286 (Pa. Super. 1996); see also 18 Pa.C.S. § 5503(a) (defendant must act with the "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof"). "The specific intent requirement of this statute may be met by a showing of a reckless disregard of the risk of public inconvenience, annoyance, or alarm, even if the appellant's intent was to send a message to a certain individual, rather than to cause public inconvenience, annoyance, or alarm." Maerz, 879 A.2d at 1269 (citation and quotation marks omitted). Commonwealth v. McConnell, 244 A.3d 44, 51 (Pa. Super. 2020).

Second, Section 5503(a)(4) requires proof that a defendant "create[d] a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S.A. § 5503(a)(4). "A condition is 'hazardous' if it 'involves danger or risk' of 'the possibility of injuries resulting from public disorders.' Commonwealth v. Roth, 531 A.2d 1133, 1137 (Pa. Super. 1987), app. den., 541 A.2d 1137 (Pa.1988); Commonwealth v. Williams, 574 A.2d 1161, 1164 (Pa. Super. 1990). A hazardous condition has been defined as one that involves "danger [or] risk." Roth, 531 A.2d at 1137. "The dangers and risks against which the disorderly conduct statute

15

are directed are the possibility of injuries resulting from public disorders." Williams, 574 A.2d at 1164. "The reckless creation of a risk of public alarm, annoyance or inconvenience is as criminal as actually causing such sentiments." Commonwealth v. Reynolds, 835 A.2d 720, 731 (Pa. Super.2003). By contrast, the meaning of 'physically offensive condition' 'encompasses direct assaults on the physical senses of members of the public' as opposed to 'merely morally offensive' conduct. Commonwealth v. McConnell, 244 A.3d 44, 49 (Pa. Super. 2020). The Commonwealth needs to prove that the defendant created either a hazardous condition or a physically offensive condition, not both. See, McConnell, 244 A.3d at 49 n.3. Coniker, 290 A.3d at 735-736.

The defendant appears to challenge the sufficiency of the evidence at No. 231 C 2020 by asserting that he was engaging in a legitimate act of protest. A "legitimate purpose" under the disorderly conduct statute encompasses "conduct which is lawfully and constitutionally protected." Roth, 531 A.2d at 1137. It is long settled, however, that the First Amendment does not bar a conviction for disorderly conduct. See, Starzell v. City of Philadelphia, Pennsylvania, 533 F.3d 183, 204 (3d. Cir. 2008). For example, in Commonwealth v. Hughes, 410 A.2d 1272 (Pa. Super. 1979), the Court found sufficient evidence of disorderly conduct without offending the First Amendment where in the presence of members of the general public the defendant shouted obscenities "although the principal intent of the defendant may have been to insult the police rather than to cause [p]ublic inconvenience, annoyance, or alarm." Hughes, 410 A.2d at 1274. In Roth, the Court found that the defendant created a hazardous condition by disrupting Easter Sunday services with a symbolic act of protest. Noting the "emotionally charged atmosphere," the Court reasoned that the protestors' approach could have caused altercations with the church members, holding that the defendants' actions "transgressed from peaceful protest to civil disobedience" and therefore lacked a legitimate purpose under the disorderly conduct statute. Roth, 531 A.2d at 1137-

16

1138; Coniker, 290 A.3d at 735. In McConnell, the Court found sufficient evidence of disorderly conduct despite the defendant's claim that his use of bright floodlights was a legitimate act of protest, observing that, "[e]ven to the extent Appellant could claim to have been exercising his right to free speech by turning on the floodlights as a 'protest,' his attempt to evade liability for disorderly conduct fails because he did not exercise his rights in a reasonable manner. McConnell, 244 A.3d at 52–53. In Commonwealth v. Cosby, No. 2057 EDA 2021, 2022 WL 4361906(Pa. Super. Ct. September 21, 2022), app. den., 293 A.3d 561 (Pa. 2023)(non-precedential decision), the Court found sufficient evidence of disorderly conduct where the defendant screamed profanities and loudly made offensive remarks while she stood on the public sidewalk outside of a private residence finding that, although the defendant "may have intended to send a message to the residents of the house specifically, the record reflects that by initiating these interactions in public, the defendant acted with a reckless disregard for the risk of public inconvenience, annoyance, or alarm." Cosby, at *7-8.

Turning to the evidence in the defendant's case, the evidence shows that the defendant caused significant disruption to the peaceful and safe trafficking of students to their school during the beginning of the school day. He was dressed in a mask and shouting loudly while standing at and/or on the entrance to the school driveway, drawing attention to himself and away from the safe operation of vehicles and pedestrians who were attempting to access the school. Parents called the school complaining about the defendant's activities which were causing alarm to the students and blocking traffic. School staff and police officers who observed the defendant's actions were similarly concerned about the disruptive effect of the defendant's presence and behavior. As such, the defendant's activities crossed the line from serving any suggested legitimate purpose to

creating a hazardous and offensive condition which caused public inconvenience, annoyance and alarm.

Regarding the sufficiency of the evidence at No. 5559 C 2019, a review of the Commonwealth's proof shows that the evidence supports the conviction of Disorderly Conduct. Despite a proper request, the defendant refused to stop recording of an area where confidential and protected activities of the police were conducted. He then proceeded to create a disruption in the lobby of state police barracks. Initially, the evidence supports the conclusion that the lobby of the barracks is a public place. "Public" is defined in Section 5503(a)(4) as any place "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public." 18 Pa.C.S. §5503(c). As a place of business which was open to the public, the lobby of the barracks is a public area. Next, the evidence shows that the defendant's actions did not have a legitimate purpose. Although the defendant appears to argue that he was conducting the legitimate activity of seeking information about complaints he had filed against various state police employees, the evidence shows that he was instead pursuing the activity of attempting to record an area which was protected from public access. As such, the evidence proves that the defendant's actions had no legitimate purpose. Finally, the evidence proves that the defendant's actions caused a significant disruption to the business of the state police and any members of the public who required their services.

## II    Jury Instructions

18

The defendant raises an issue concerning the jury instructions, claiming error in the Courts instruction regarding criminal intent.

Before turning to the merits of the defendant's arguments, this Court must first address whether the defendant waived any issue claiming error in the jury charge when he failed to interpose an objection to the jury instructions after the charge was delivered to the jury but before the jury retired to deliberate. In Commonwealth v. Pressley, 887 A.2d 220 (Pa. 2005), the Pennsylvania Supreme Court, interpreting Rules of Criminal Procedure 603[5] and 647,[6] held that "the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a

---

[5] Rule 603 provides:

Rule 603. Exceptions.

(A) Any ruling of the judge on an objection or motion made during the trial of any action or proceeding shall have the effect of a sealed exception in favor of the party adversely affected without the necessity of a formal request or notation made on the record.

(B) This rule shall not be applicable to the charge to the jury.

[6] Rule 647 provides in pertinent part:

Rule 647. Request for Instructions, Charge to the Jury, and Preliminary Instructions.

(A) Before the taking of evidence, the trial judge shall give instructions to the jurors as provided in Rule 626.

(B) Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments, and at the same time copies thereof shall be furnished to the other parties. Before closing arguments, the trial judge shall inform the parties on the record of the judge's rulings on all written requests and which instructions shall be submitted to the jury in writing. The trial judge shall charge the jury after the arguments are completed.

(C) No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate. All such objections shall be made beyond the hearing of the jury.

specific objection or exception to the charge or the trial court's ruling respecting the points." Pressley, 887 A.2d at 225. The Court explained:

> The pertinent rules, therefore, require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

Pressley, 887 A.2d at 224. Failure to comply with the requirement that a timely objection be lodged after the jury has been charged results in waiver of any objection to the jury instructions even where an objection was made at a prior charging conference. Commonwealth v. Parker, 104 A.3d 17, 29 (Pa. Super. 2014); Commonwealth v. Cosby, 224 A.3d 372, 421-422 (Pa. Super. 2019), vacated on other grounds, 252 A.3d 1092 (Pa. 2021)(objections to jury charge is waived where no objection was posed at trial after jury was instructed and before they retired to deliberate); and Commonwealth v. Sinclair, No. 1289 EDA 2022, 2023 WL 2583850, at *5 (Pa. Super. Ct. March 21, 2023)(non-precedential decision)(Objection to jury instructions is waived where there was no objection made to jury instructions after they were given to the jury).

In defendant's case, during the trial there was extensive discussion and argument about the jury instructions prior to the Court's delivering the charge. (TT 1323 – 1343) When asked whether there were any concerns about the jury charge before retiring the jury for deliberations, however, the defendant did not raise an objection. (TT 1370) Thus, by accepting the jury charge, the defendant waived any issues concerning the jury instructions. The defendant also accepted the Court's responses to jury questions. (TT 1373; 1390; 1391) His arguments about error in the jury charge, therefore, are not properly preserved for consideration by this Court.

20

Even should these issues not be deemed waived, this Court finds that they lack merit. A review of the Court's instructions demonstrates that the jury was properly instructed regarding *mens rea* and the consideration of the defendant's exercise of a legitimate right to protest. There was no error in the jury instructions.

BY THE COURT:

_____
Richard E. McCormick, Jr., Judge

cc: Justin Juan De La Cruz Martinez, 502 N. 12th Ave., Albany, IL 61230
Anthony Iannamorelli, Esq., 2 N. Main Street, Ste. 206, Greensburg, PA 15601
Peter Flanigan, Esq., Office of the Criminal Court Administrator

21