J-A29042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LISA MARIE DARRAH | : | |
| | : | |
| Appellant | : | No. 500 WDA 2021 |

Appeal from the Judgment of Sentence Entered March 9, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0014255-2019

BEFORE:  BENDER, P.J.E., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:          **FILED:  NOVEMBER 29, 2021**

Lisa Marie Darrah (Darrah) appeals from the judgment of sentence imposed in the Court of Common Pleas of Allegheny County (trial court) following her bench conviction of two counts of harassment and one count of disorderly conduct[1] for her treatment of her neighbors Kelly Keller (Keller) and Keller's daughter, Mia Jarnot (Jarnot).  On appeal, Darrah challenges the sufficiency of the evidence supporting her conviction.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2709(a)(4), 5503(a)(3).

**I.**

**A.**

This case arises from a series of incidents in the summer and fall of 2019 during which Darrah shouted obscenities at Keller and Jarnot. Jarnot was 17 years old at the time. The parties reside in a residential neighborhood of 44 houses with 14 single-family homes on their street. Darrah is wheelchair bound and resides with her mother next door to Keller.

**B.**

At Darrah's February 2021 bench trial, the Commonwealth presented the testimony of Keller, Jarnot and Officer Thomas Trocki of the West Deer Township Police Department. Keller testified that during a neighborhood yard sale on July 14, 2019, at which "there were a lot of people coming and going," Darrah "was riding back and forth in front of my driveway and she yelled some sort of obscenity." (N.T. Trial, 2/08/21, at 19). Darrah went to a neighboring home before riding past Keller's property again while Keller was in her garage looking at her phone. Darrah accused Keller of videotaping her and yelled numerous obscenities at Keller, including "fucking bitch" and "filthy cunt." She screamed: "You are so fucking ugly, why don't you put some makeup on. Pig." (*Id.* at 19-20). Keller filed a police report the next morning.

At approximately 6:00 p.m. on July 15, 2019, Darrah yelled graphic insults to Keller concerning Jarnot as Keller washed her car in her driveway. Keller testified that Darrah "started commenting about my daughter being

'fucking ugly' and being a 'whore' and that she had nudes [photographs] of my daughter and they were spread all over West Deer." (*Id.* at 21). Darrah shouted these insults while looking directly at Keller from her driveway at a distance of about 25 to 30 feet away. (*Id.* at 22). Darrah then sent Keller a note through Facebook Messenger stating, "Take all the videos you want honey. I know tons of young men that have naked pictures of your daughter. Be careful what you wish for. Don't harass me again. This is your final warning . . . Little piglet she is. You got to be ashamed of yourself that you raised a daughter that is so sleazy." (*Id.* at 24).

On July 31, 2019, while Keller and Jarnot were on their back patio with Keller's husband, Darrah yelled to them from her patio, "You dike-looking fat bitch. You go down on chicks you are so ugly. You fat dike bitch. And little dope smoking bitch you got over there like her fat-ass mother. You dike . . . Do you like men or do you go down on chicks?" (*Id.* at 26). Keller recorded the incident using her cell phone.

On October 12, 2019, as Jarnot was preparing to leave for a homecoming dance, Darrah yelled obscenities at her and Keller. They went inside of their home to avoid Darrah and Keller called the police. Jarnot called her friends to pick her up and when they arrived she quickly left in their vehicle. Officer Trocki arrived at the scene as Darrah was still shouting insults. Keller testified that from the time of the first incident with Darrah at the yard

sale in July until the homecoming incident in October, she called the police four or five times to report Darrah's conduct.

Jarnot testified regarding a July 30, 2019 incident wherein "a couple of friends had stopped by my house before I went to volleyball, and I went outside to talk to them and [Darrah] came outside and started yelling at me, calling me a 'fat hoe' and accused me of doing a drug deal." (*Id.* at 43). Darrah then took a photograph of her "and it circulated to some people, and then it was sent to a friend of mine in the car, who forwarded it to me." (*Id.*). Jarnot did not respond to Darrah and instead went into her house because she was "really embarrassed and scared." (*Id.*). On July 31, 2019, while she was on the patio with her mother, Darrah screamed, "You dike-looking fat bitch. You go down on chicks you are so ugly. You fucking dike bitch." (*Id.* at 44). Darrah also called her a "drug addict" and a "dope smoking little fucking bitch." (*Id.*). Regarding the October 12, 2019 homecoming incident, Jarnot explained that she was outside her house "about to start taking pictures in my dress and [Darrah] came outside" and began yelling from her driveway that Jarnot was a "whore . . . so fucking ugly" she "couldn't even get a date." (*Id.*). Darrah also asked her if she "liked men or eat pussy." (*Id.*). Jarnot testified that she never responded to Darrah's insults because she "was just too afraid to say anything back." (*Id.* at 45).

Officer Trocki testified that he took Keller's report of harassment on July 15, 2019, and that he immediately called Darrah and left a message asking

her to return the call. Darrah did not return the call but did answer the phone the next day. The officer described Darrah's demeaner as "extremely angry and irritated" as she talked over him during the call. Darrah yelled that she would call Keller "a fat fucking pig" and other vulgar terms if she wanted to. (*Id.* at 48). Darrah referred to Jarnot as a "little slut [who] little boys have naked pictures of[.]" (*Id.* at 49). When Officer Trocki advised Darrah not to continue this conduct, she indicated that she would not comply with this directive. Officer Trocki was dispatched to the Keller residence on October 12, 2019, and when he arrived, Darrah was in her driveway screaming vulgarities. The officer directed her to go inside her home.

The defense did not call any witnesses on Darrah's behalf at trial after the court conducted a thorough colloquy. The court permitted the parties to submit briefs on the legal issues involved in the case. On March 9, 2021, the trial court convicted Darrah of the aforementioned offenses[2] and sentenced her to an aggregate term of two years of probation. This timely appeal followed. Darrah and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b). In its opinion, the court expressly found the testimony of Keller

---

[2] The Disorderly Conduct count was graded as a third-degree misdemeanor instead of a summary offense based on the trial court's finding that Darrah continued her disparaging conduct despite Officer Trocki's prior warning that she desist. *See* 18 Pa.C.S. § 5503(b) (setting forth permissible grading for the offense).

and Jarnot credible as to Darrah's derogatory insults and profanity directed at them. (*See* Trial Court Opinion, 6/22/21, at 6).

## II.

Darrah first contests the sufficiency of the evidence supporting her conviction of harassment. Darrah characterizes the incidents with Keller and Jarnot as "merely name-calling during an ongoing dispute with her neighbors [and] *de minimus* conduct" falling short of criminal harassment. (Darrah's Brief at 12). Darrah also challenges the element of intent by arguing the evidence did not demonstrate that she had the specific intent to harass, annoy or alarm either Keller or Jarnot.[3]

---

[3]

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*(Footnote Continued Next Page)*

The Crimes Code provides in relevant part: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]" 18 Pa.C.S. § 2709(a)(4). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (citation omitted). Additionally, Section 312 provides for dismissal of a case where an infraction is negligible:

**§ 312. De minimis infractions**

**(a) General rule.**—The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

---

*Commonwealth v. Williams*, 255 A.3d 565, 578-79 (Pa. Super. 2021) (citation omitted).

18 Pa.C.S. § 312(a)(1)-(3).[4]  "An offense alleged to be *de minimis* in nature should not be dismissed where either harm to the victim or society in fact occurs."  **Toomer**, **supra** at 960 (citation omitted).

In the instant case, the trial court rejected Darrah's sufficiency challenge to her harassment conviction, reasoning:

> Keller and Jarnot credibly testified to several incidents wherein Appellant shouted vulgar insults at them, degraded their physical appearance, and accused Jarnot of illegal activity and sexual promiscuity.  These actions rise above *de minimus* infractions and establish Appellant's clear and specific intent to harass, annoy, or alarm Keller and Jarnot.  Furthermore, screaming obscenities at Keller and Jarnot, and repeatedly making derogatory comments regarding Jarnot's sexual promiscuity, satisfy the element of lewd, lascivious, threatening or obscene in this matter.

(Trial Ct. Op., at 6) (quotation marks and case citation omitted).

After review of the record, we agree with the trial court's assessment. Contrary to Darrah's view that the incidents merely amounted to a few instances of "discourteous" name calling during a "neighborly dispute," and that her behavior was not overtly crude or lewd, we disagree.  (Darrah's Brief, at 10, 18).  Instead, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, her verbal abuse of Keller and Jarnot by

---

[4] We review a trial court's finding as to whether an infraction is *de minimis* for an abuse of discretion.  **See Commonwealth v. Toomer**, 159 A.3d 956, 960 (Pa. Super. 2017).

attacking their physical appearance and screaming allegations of sexual promiscuity and drug use was criminal.

Specifically, the evidence demonstrates that Darrah repeatedly shouted graphic, profane remarks to Keller and Jarnot while they engaged in various activities on their property, including participating in a neighborhood yard sale, washing their car, conversing with friends and family and preparing to take photographs before a high school homecoming dance. Jarnot expressly testified that she did not respond to Darrah's insults because she was "really embarrassed and scared" and "too afraid to say anything back." (N.T. Trial, at 43, 45). We agree with the trial court's conclusion that the record contains ample evidence establishing that Darrah's infractions were not simply *de minimus* and that she communicated obscene, lewd statements to Keller and Jarnot with the intent to harass, annoy and/or alarm them. Darrah's first issue merits no relief.

## III.

Darrah next challenges her conviction of disorderly conduct on two bases. She first argues the evidence failed to demonstrate that she intended to cause a public rather than a private disturbance. Darrah maintains that because she "was on her own private property when she called her neighbors bad names . . . she did not risk inciting public unrest through her actions." (Darrah's Brief, at 19). Alternatively, Darrah argues the grading of the count as a misdemeanor of the third degree instead of as a summary offense was

erroneous where the Commonwealth failed to show that she persisted her conduct after she received a reasonable warning to desist. Darrah posits that her brief phone conversation with Officer Trocki three months before her arrest does not constitute a reasonable warning.

**A.**

We begin by addressing Darrah's claim that she did not act with the intent to create a public disturbance and that she instead "manifested an intent to cause a private inconvenience to her neighbors." (Darrah's Brief, at 23).

The Crimes Code provides: "A person is guilty of disorderly conduct if, with intent to cause **public** inconvenience, annoyance or alarm, **or recklessly creating a risk thereof**, [s]he: . . . (3) uses obscene language, or makes an obscene gesture[.]" 18 Pa.C.S. § 5503(a)(3) (emphasis added). The statute further provides that conduct is considered "public" if it affects or is likely to affect "persons in a place to which the public or a substantial group has access"; among these delineated locations are "places of business or amusement, **any neighborhood**, or any premises which are open to the public." *Id.* at § 5503(c) (emphasis added).

"Whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance." *Commonwealth v. Goldman*, 252 A.3d 668, 673–74 (Pa. Super. 2021). The *mens rea* element of the statute requires proof that an

- 10 -

appellant by her actions intentionally caused or recklessly created a risk of causing a public inconvenience, annoyance or alarm. *See Commonwealth v. McConnell*, 244 A.3d 44, 51 (Pa. Super. 2020). This applies even if the appellant's intent was to send a message to a certain individual rather than impact the public. *See id*.

We conclude the "public" element of the Disorderly Conduct statute was met by Darrah's repeated shouting at Keller and Jarnot as they engaged in various outdoor activities in the yard of their home in their neighborhood with more than a dozen residences on their street. First, the statute specifically enumerates "any neighborhood" as a public place. Additionally, the evidence showed that Darrah yelled obscenities at Keller during a yard sale organized by neighborhood residents open to the public during which "there were a lot of people coming and going." (N.T. Trial, at 19). Although Darrah claims she yelled "bad names" from her private property only, Keller specifically testified that during the yard sale, Darrah "was riding back and forth **in front of my driveway** and she yelled some sort of obscenity." (*Id.*) (emphasis added). Darrah then went to a neighboring home to look at items for sale before she rode by Keller again while yelling "fucking bitch" and accusing Keller of videotaping her. (*Id.*).

In subsequent incidents, Darrah shouted obscenities at Jarnot while she was talking with her friends outside of her home before a volleyball game and as she prepared to attend a school homecoming dance. Darrah also took a

photograph of Jarnot while she was with friends and circulated it to other individuals who forwarded it to Jarnot's friend. Darrah made several graphic derogatory allegations relating to Jarnot's sexuality by threatening "that **she had nudes** of [Jarnot] and **they were spread all over West Deer**"; and representing: "**I know tons of young men** that have naked pictures of [Jarnot]." (*Id.* at 21, 24) (emphasis added).

Thus, contrary to Darrah's assertion, the record shows that this was not merely a private neighborly dispute. Rather, it reflects that she launched unprovoked crude slurs at Keller and Jarnot in front of other people while outside in a residential neighborhood, and that she actively involved other individuals by taking and circulating at least one photograph of Jarnot while indicating that she was in possession of other pictures of the minor in a sexually compromised state and asserting that she knew of many men who were in possession of these same photographs. Accordingly, Darrah's first challenge to her disorderly conduct conviction fails.

**B.**

We next address Darrah's contention that the evidence was insufficient to sustain her conviction of disorderly conduct graded as a third degree misdemeanor as opposed to a summary offense.[5]

---

[5] Because the proper grading of a criminal offense is an issue of statutory interpretation implicating the legality of sentence, this issue raises a question of law and our standard of review is *de novo* and scope of review plenary. *See Commonwealth v. Raymond*, 233 A.3d 809, 816 (Pa. Super. 2020).

Section 5503 outlines the permissible grading for the offense of disorderly conduct:

> **(b) Grading.**—An offense under this section is a misdemeanor of the third degree if the intent of the actor is to cause substantial harm or serious inconvenience, **or** if he persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a summary offense.

18 Pa.C.S. § 5503(b) (emphasis added).

We agree with the trial court's assessment that grading the offense as a misdemeanor was entirely appropriate based on Officer Trocki's testimony describing his interactions with Darrah. Specifically, he advised Darrah to stop yelling vulgar statements at Keller and Jarnot immediately after Keller filed the initial police report in July 2019. Darrah became irate at his request, yelled over him during their conversation and blatantly stated that she would not comply with his directive. Officer Trocki then personally observed Darrah scream obscenities at Keller when he responded to the residence in October 2019. Hence, it is clear that Darrah "persist[ed] in disorderly conduct after reasonable warning or request to desist." *See* 18 Pa.C.S. § 5503(b).

Further, as the statutory requirements are disjunctive, we find that grading of the offense as a misdemeanor was also appropriate under the first prong, *i.e.*, upon a showing "the intent of the actor is to cause substantial harm or serious inconvenience." *Id.* The record in this case clearly evidences Darrah's intent to cause much more than a serious inconvenience to Keller and Jarnot when she repeatedly went outside her home for the sole purpose

of hurling venomous insults concerning their weight, sexual activity and drug use in the presence of their friends and family, while Jarnot was a minor. Darrah's final issue merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/29/2021