J-S09020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ALLISON ROSE KORMAN | : | |
| | : | |
| Appellant | : | No. 1419 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 4, 2024
In the Court of Common Pleas of Wayne County Criminal Division at
No(s):  CP-64-CR-0000013-2023

BEFORE:   LAZARUS, P.J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BECK, J.:                                    **FILED JUNE 4, 2025**

Allison Rose Korman ("Korman") appeals from the judgment of sentence entered by the Wayne County Court of Common Pleas ("trial court") after the trial court convicted her of the summary offenses of disorderly conduct and harassment.[1]  Korman's counsel, Attorney Steven Burlein ("Counsel"), seeks to withdraw from representation pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).  Upon review, we deny Counsel's petition to withdraw and direct Counsel to file a merits brief.

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  18 Pa.C.S. §§ 5503(a)(4), 2709(a)(3).

In 2022, Korman was an employee at Vinnie's Original Brooklyn Bagels in Honesdale, Pennsylvania for approximately two months. In July 2022, Vincent Nicoletti ("Nicoletti"), the owner of the store terminated Korman's employment after he discovered money was missing from the cash register.

Korman filed a Pennsylvania Human Relations Commission Action ("HRCA") complaint against Nicoletti in which she alleged that Nicoletti wrongfully terminated her because she had a disability. In November 2022, Nicoletti completed the paperwork necessary for Korman's HRCA complaint and mailed a copy to her home address. This enraged Korman and on November 11, 2022, she began calling Nicoletti repeatedly and screaming at him for sending the paperwork to her house. She left him a voicemail in which she told him that he was going to "pay for what he did" and threatened to press charges against him and his business partner, Jessica Hall ("Hall"), as Korman claimed Hall threw boiling water on her one day at work. Nicoletti asked Korman to stop calling him several times and eventually stopped answering her calls. Korman then began continuously texting Nicoletti, so he blocked her number.

The next morning, Korman entered the bagel shop at around 7:20 a.m. She began pacing back and forth, waving her phone around, and demanded to speak with Hall. Mistaking Korman's phone for a gun, store employee JoAnn Butler ("Butler") dropped to the floor and hid behind a display counter. When Hall went to the front of the store, Korman began berating her, calling her a

thief, a terrible manager, and accused her of burning her with boiling water. Korman then proceeded to block the cash register so customers could not make any purchases. Hall informed Korman that she was not welcome in the store and asked her to leave, but Korman refused and continued to scream at Hall. At no point during her time in the store did Korman purchase anything or indicate that she was there to retrieve any personal items. After Korman finally left the store, Hall called Nicoletti and the Pennsylvania State Police ("PSP").

On November 17, 2022, the PSP filed a criminal complaint in which it charged Korman with defiant trespass, harassment, and disorderly conduct. On February 1, 2024, following a nonjury trial, the trial court found Korman guilty of disorderly conduct and harassment, and not guilty of defiant trespass. On April 4, 2024, the trial court sentenced Korman to an aggregate term of 180 days of probation. The trial court also imposed several conditions on Korman's probation, including that she have no contact with Nicoletti, Hall, and Butler, and that she refrain from making any derogatory remarks about those individuals on any social media platform. Korman filed a timely post-sentence motion in which she challenged the no-contact conditions of her probation, which the trial court denied on April 29, 2024.

Korman timely appealed to this Court. On May 21, 2024, the trial court ordered Korman to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On May 24,

2024, in lieu of filing a Rule 1925(b) statement, Counsel filed a statement of intent to file an *Anders* brief.

On December 31, 2024, Counsel filed an *Anders* brief and petition to withdraw as counsel in this Court.[2] When faced with an *Anders* brief, we may not review the merits of the underlying issues or allow the withdrawal of counsel without first deciding whether counsel has complied with all requirements set forth in *Anders* and *Santiago*. *Commonwealth v. Wimbush*, 951 A.2d 379, 382 (Pa. Super. 2008). There are mandates that counsel seeking to withdraw pursuant to *Anders* must follow that arise because a criminal defendant has a constitutional right to a direct appeal and to be represented by counsel for the pendency of that appeal. *Commonwealth v. Woods*, 939 A.2d 896, 898 (Pa. Super. 2007).

We have summarized these requirements as follows:

> Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof.

---

[2] On April 1, 2025, Korman filed a motion for an extension of time to file a pro se response to Counsel's petition to withdraw and *Anders* brief. On April 3, 2025, we granted Korman's motion and allowed her thirty days to file a responsive brief. *See* Order, 4/3/2025. Korman filed a response, which was received by this Court on May 8, 2025. She does not address any of the contentions raised by Counsel in the *Anders* brief or raise any additional claims that this Court could review.

> ***Anders*** counsel must also provide a copy of the ***Anders*** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of ***Anders***, this Court will deny the petition to withdraw and remand the case with appropriate instructions (e.g., directing counsel either to comply with ***Anders*** or file an advocate's brief on [a]ppellant's behalf).

***Id.*** (citations omitted).

Additionally, ***Santiago*** sets forth precisely what an ***Anders*** brief must contain:

> [T]he ***Anders*** brief that accompanies court-appointed counsel's petition to withdraw … must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

If counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings to determine whether there are any other non-frivolous issues that the appellant could raise on appeal. ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa. Super. 2018) (en banc). Substantial compliance with ***Anders*** and ***Santiago*** requirements is sufficient. ***Commonwealth v. Redmond***, 273 A.3d 1247, 1252 (Pa. Super. 2022).

Instantly, we conclude that Counsel has complied with the requirements outlined above. Counsel has filed a petition with this Court stating that after reviewing the record, he finds this appeal to be wholly frivolous. *See* Petition to Withdraw as Counsel, 12/31/2024, ¶ 3. In conformance with *Santiago*, Counsel's *Anders* brief includes summaries of the facts and procedural history of the case and discusses the issues he believes might arguably support Korman's appeal. *See Anders* Brief at 9-21. Counsel's brief further sets forth his conclusion that the appeal is frivolous. *Id.* at 15-22. Finally, Counsel provided Korman with a copy of the *Anders* brief and petition to withdraw as counsel and advised her of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention. *See id.*, Exhibit A; *see also* Letter, 1/23/2025. Because Counsel has complied with the procedural requirements for withdrawing from representation, we turn our attention to the issues Counsel raised in the *Anders* brief:

1. Did the trial court err in denying [Korman]'s post-sentence motion regarding [her] First Amendment rights under the U.S. Constitution and the Pennsylvania Constitution while on probation?

2. Did the trial court err in finding [Korman] guilty of the charges of harassment and disorderly conduct, as such finding was against the weight of the evidence?

3. Was the evidence insufficient to support the finding of guilt on the charges of harassment and disorderly conduct beyond a reasonable doubt?

*Anders* Brief at 8 (unnecessary capitalization omitted).

**No Contact Provisions**

In her first issue, Korman argues that the trial court erred in denying her post-sentence motion in which she challenged the no-contact provisions of her probationary sentence. **Anders** Brief at 16-17. She asserts that the no-contact provisions were excessive and violate her right to free speech under the First Amendment to the United States Constitution. **Id.**

Generally, appellate courts in Pennsylvania will not decide moot questions. **Commonwealth v. Smith**, 486 A.2d 445, 447 (Pa. Super. 1984). "An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect." **Commonwealth v. Nava**, 966 A.2d 630, 633 (Pa. Super. 2009) (citation omitted). "[A] question raised on appeal may become moot by events which occur after the appeal was filed." **Commonwealth v. Kelly**, 418 A.2d 387, 388 (Pa. Super. 1980). This Court has held that if an appellant has completed serving her sentence and she is no longer subject to any direct criminal consequences, an appeal challenging the sentence imposed is moot and incapable of review. **Commonwealth v. Schmohl**, 975 A.2d 1144, 1149 (Pa. Super. 2009).

Here, the trial court ordered Korman to serve 180 days of probation beginning on April 4, 2024. **See** Sentencing Order, 4/4/2024. Thus, Korman's term of supervision concluded on October 1, 2024. Consequently, Korman is no longer serving the sentence she seeks to challenge and is not suffering any consequences because of the sentence. Korman's challenge to the no-contact provisions of her sentence is therefore moot. **See Commonwealth v. King**,

786 A.2d 993, 996-97 (Pa. Super. 2001) (holding that a defendant's challenge to his probationary sentence was moot where he had already served the sentence imposed). Accordingly, we agree with Counsel that Korman's first issue is frivolous.

## Weight of the Evidence

In her second issue, Korman argues that the trial court erred in failing to conclude that the verdict was against the weight of the evidence. *Anders* Brief at 17-18. An appellant must raise a challenge to the weight of the evidence prior to sentencing or in a post-sentence motion. *See* Pa.R.Crim.P. 607(A). An appellant waives review of a weight claim if it is raised for the first time on appeal. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009). In this case, Korman did not raise her weight claim before the trial court. *See* Post-Sentence Motion, 4/8/2024; N.T, 4/4/2024, at 4-15. Thus, it is waived. *See Commonwealth v. Priest*, 18 A.3d 1235 (Pa. Super. 2011) (finding waiver of a weight claim where the appellant did not present the claim to the trial court before filing a notice of appeal). Accordingly, we agree Korman's second issue is likewise frivolous.

## Sufficiency of the Evidence

Finally, Korman challenges the sufficiency of the evidence to sustain her harassment and disorderly conduct convictions. *Anders* Brief at 19-21. "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review

claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (quotation marks and citation omitted). Furthermore, "a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." ***Id.*** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id.***

Harassment

"A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person … engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose." 18 Pa.C.S. § 2709(a)(3). A course of conduct is "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously." ***Id.*** § 2709(f). The purpose underlying the requirement that the defendant's acts serve no legitimate purpose is "to exclude from this subsection any conduct that directly furthers some legitimate desire or objective of the actor"

and to ensure the subsection's application "to unarguably reprehensible instances of intentional imposition on another." ***Commonwealth v. Coniker***, 290 A.3d 725, 738 (Pa. Super. 2023) (quotation marks and citation omitted).

With respect to her harassment conviction, the record reflects that as a result of Nicoletti mailing the HRCA paperwork to her home, Korman began repeatedly calling him and screaming at him. N.T., 2/1/2024, at 7-8. Nicoletti testified that Korman told him that "she was going to come after me for sending stuff to her house" and that he was going to "pay for what [he] did." ***Id.*** at 10. After Nicoletti asked Korman to stop calling him, she began continuously texting him to the point that he had to block her number. ***Id.*** at 9.

Based on the foregoing, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence plainly established Korman engaged in a course of conduct with the intent to harass, annoy, or alarm Nicoletti, by repeatedly calling and texting him to the point he had to block her number. ***See*** 18 Pa.C.S. § 2709(a)(3). We further conclude that the evidence clearly established that Korman's actions served no legitimate purpose, as she made threatening statements to Nicoletti merely for mailing paperwork related to her HRCA claim to her home. ***See id.*** We therefore conclude that Korman's challenge to the sufficiency of the evidence to sustain her harassment conviction is frivolous.

Disorderly Conduct

Pursuant to the provision for which Korman was convicted, "A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," she creates "a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." 18 Pa.C.S. § 5503(a)(4). "A condition is hazardous if it involves danger or risk of the possibility of injuries resulting from public disorders." *Coniker*, 290 A.3d at 735 (quotation marks and citation omitted). A "physically offensive condition encompasses direct assaults on the physical senses of members of the public as opposed to merely morally offensive conduct." *Id.* (quotation marks and citation omitted). This Court has "explained that a defendant can create a physically offensive condition if she invades the physical privacy of another in an extreme manner or if she sets off a 'stink bomb', strews rotting garbage in public places, or shines blinding lights in the eyes of others." *Commonwealth v. McConnell*, 244 A.3d 44, 49 (Pa. Super. 2020). Importantly, our Supreme Court has cautioned that "the offense of disorderly conduct is not intended as a catchall for every act which annoys or disturbs people" and should not "be used as a dragnet for all the irritations which breed in the ferment of a community." *Commonwealth v. Hock*, 728 A.2d 943, 947 (Pa. 1999).

The record reflects that on November 12, 2022, Korman entered Vinnie's Original Brooklyn Bagels at around 7:00 a.m. and began pacing back and forth, waving her arms around, and screaming that she wanted to speak

to Hall, the store's manager. N.T., 2/1/2024, at 18-19, 27. Butler, mistaking Korman's phone for a gun, hid behind a counter. *Id.* at 19. Korman proceeded to block the store's register so customers could not make any purchases. *Id.* at 20. When Hall went to the front of the store to speak with Korman, she accused Hall of throwing boiling water on her, told her that she was a terrible manager, and claimed that she was at the store to collect video evidence for the governor. *Id.* at 19, 28. Hall then told Korman that she was no longer welcome in the store and demanded that she leave. *Id.* at 29. While Korman did not immediately exit the store, she did leave shortly after Hall's request, as Hall estimated that the entire interaction lasted about two or three minutes. *Id.* at 29-30.

In determining that Korman's challenge to the sufficiency of the evidence to sustain her disorderly conduct conviction is frivolous, Counsel, in his *Anders* brief, states that Korman

> entered a public establishment, was belligerent, blocked the cash register and refused to leave. In examination of the evidence presented at trial, with all reasonable inference drawn therefrom, and viewed in the light most favorable to the Commonwealth, it was reasonable for the trial court find sufficient evidence to support a finding of guilt beyond a reasonable doubt on the … [d]isorderly [c]onduct charges.

*Anders* Brief at 20-21.

Although Counsel accurately recalls the testimony from trial of Korman's actions at the bagel store, *see* N.T.,2/1/2024, at 18-34, he fails to explain how her behavior satisfied each of the necessary elements to sustain a

conviction of disorderly conduct under section 5503(a)(4). *See Anders* Brief at 19-21. Specifically, while the *Anders* brief sets forth the definition of disorderly conduct pursuant to section 5503(a)(4), the brief does not explain or define terms contained within the definition, such as "hazardous condition" or "physically offensive condition," nor does it cite any caselaw to support a finding that Korman's actions satisfied either of the two statutory requirements. *See id.*; *see also* 18 Pa.C.S. § 5503(a)(4). Instead, Counsel's *Anders* brief summarily concludes that the evidence was sufficient to sustain Korman's disorderly conduct conviction and that raising a sufficiency challenge to that conviction would be "wholly frivolous." *See Anders* Brief at 21. Thus, while it is easy to see how Korman's behavior reflected that she acted "with intent to cause public inconvenience, annoyance or alarm," it is unclear whether her actions created a "hazardous or physically offensive condition." *See* 18 Pa.C.S. § 5503(a)(4).

We therefore conclude that Korman's challenge to sufficiency of the evidence to sustain her disorderly conduct conviction is not frivolous. This is not to say the issue will merit relief; we solely conclude at this stage that the challenge is not frivolous. *See Commonwealth v. Blauser*, 166 A.3d 428, 434 (Pa. Super. 2017). ("While ultimately, appellant may not be entitled to any relief, we cannot say that the appeal is 'wholly frivolous,' i.e., without any basis in law or fact."). Accordingly, we direct Counsel to file a merits brief on this issue, complete with citation to applicable authority and to the record.

Additionally, based on our conclusion that counsel raised a non-frivolous issue in his **Anders** brief, we need not probe the record for additional non-frivolous issues. **See Commonwealth v. Tejada**, 176 A.3d 355, 362 (Pa. Super. 2017) (finding that the panel did not have to independently examine the record for additional issues of merit where counsel was directed to file merits brief due to a finding that one of the issues set forth in the **Anders** brief was not frivolous).[3]

Counsel's petition to withdraw is denied. Counsel shall file a merits brief concerning the sufficiency of the evidence to sustain Korman's disorderly conduct conviction, as well as any other nonfrivolous issues that Counsel may identify, within thirty days of the date of this decision. The Commonwealth shall have thirty days thereafter to file a responsive brief.

Panel jurisdiction retained.

President Judge Lazarus joins the memorandum.

President Judge Emeritus Stevens notes his dissent.

---

[3] The **Tejada** Court further noted that its conclusion directing a merits brief "does not represent sub silentio a conclusion that no other arguably meritorious issues exist." **Tejada**, 176 A.3d at 362.

- 14 -